Wanda MOODY,

v.

Timothy HUTCHISON and Knox County, Tennessee.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Aug. 14, 2007 Session.

Sept. 17, 2007.

Permission to Appeal Denied by Supreme Court March 3, 2008.

Herbert S. Moncier, Knoxville, Tennessee, for appellant.

Dean B. Farmer and Kristi M. Davis, Knoxville, Tennessee, for appellee, Timothy Hutchison, Individually.

Robert H. Watson, Jr., and Reid A. Spaulding, Knoxville, Tennessee, for appellee, Knox County, Tennessee.

## OPINION

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and NORMA McGEE OGLE, J., joined.

This action was brought to gain access to public records in defendants' office. In the course of litigation numerous issues were raised, but the Trial Court ordered access to the records, and when plaintiff claimed full access was not given, the Trial Court directed the plaintiff to file a contempt petition against defendant which was done, and the records were ultimately obtained after an appeal. But the Trial Court, after ruling that plaintiff was entitled to attorney's fees, refused to award attorney's fees because plaintiff's counsel refused to comply with the Court's orders. In the course of the litigation, plaintiff sought to disqualify the Sheriff's attorney, and ultimately sought the Trial Judge's recusal. The Trial Court ruled against plaintiff on these and other issues, and plaintiff has appealed. We affirm the Judgment of the Trial Court.

## Background

The history of this action seeking disclosure of public documents was set forth in this Court's prior Opinion, *Moody v. Hutchison*, 159 S.W.3d 15 (Tenn.Ct.App. 2004).[1]

In *Moody*, we affirmed the Trial Court's judgment finding Hutchison in criminal contempt for making false statements regarding the existence/disclosure of various documents. The case was remanded to the Trial Court for further proceedings, having noted that other issues, including whether Moody was entitled to an award of attorney's fees, remained. *Id.*

Upon remand, Moody filed a Motion for Scheduling Conference, and in the appellate process, the Knox County Deputy Law Director was permitted to withdraw. Robert Watson responded to the plaintiff's Motion for Scheduling Conference, stating that he was representing Hutchison in his official capacity since the Knox County Law Director's Office had withdrawn. He agreed that a scheduling conference would help resolve the remaining issues in the case. Plaintiff then filed a Motion objecting to Knox County paying for Hutchison's defense, and asserted that Watson had a conflict of interest in representing Hutchison, and yet another Motion was filed objecting to Watson's appearance in the case.

On February 25, 2005, Watson filed a Notice of Appearance in this case, along with a copy of a Resolution of the Knox County Commission, approving the appointment of private attorneys to represent Hutchison in this case. Plaintiff responded with an Affidavit from her attorney, which stated that he had searched the records of the U.S. District Court, and determined that Watson & Hollow represented Hutchison in his individual capacity in several pending cases. Further, that Watson & Hollow was representing the Knoxville New–Sentinel's newspaper in claims it had against Hutchison in his official capacity.

Various documents were filed by both parties as to the disqualification of Watson, including an affidavit of Richard Hollow, which stated that he did represent the Knoxville News–Sentinel, but he had not been asked by any client to file suit against Hutchison for access to records. Watson also filed his affidavit, wherein he stated he had never represented Moody, nor had anyone in his firm, and that his firm had defended employees of the County, including Hutchison, in their individual capacities in eleven other lawsuits, but there was no conflict in representing the sheriff individually in other cases, and in representing him in his official capacity in this case.

On March 21, 2005, Moody filed a Motion and Application for Attorney Fees for the public records act lawsuit and the criminal contempt proceedings. Moody also sought to ask the Court to hold Hutchison personally liable for payment of the judgment for attorney's fees and costs.

On April 22, 2005, the Trial Court set a briefing and argument schedule on the issues of attorney's fees and the motion to disqualify Watson.

On November 18, 2005, the Trial Court entered an Order finding that the plaintiff had sought findings of both civil and criminal contempt against Hutchison, but that Hutchison had purged his civil contempt by producing the requested records. The

---

1. Moody filed two lawsuits against Hutchison, known as Moody I and Moody II, which were pending when this lawsuit seeking records under the Public Records Act (known as Moody III) was filed. Those cases were being heard by Chancellor Thomas R. Frierson, sitting by designation, and a stay of discovery had been entered in those cases at the time this lawsuit was filed.

Court stated that a trial was held and Hutchsion was found to be in criminal contempt on the basis of false statements to the Court, and that the Court of Appeals had affirmed that finding. The Court noted that while this Court held, in its Opinion, that attorney's fees could be awarded to compensate a private attorney appointed by the Court to prosecute a criminal contempt action, cases relied upon by this Court were distinguishable because in those cases, the attorney did not already represent a litigant interested in the outcome of the case.

The Trial Court found the case of *Wilson v. Wilson,* 984 S.W.2d 898 (Tenn.1998), to be analogous, because in that case, the attorney representing a litigant who had an interest in the outcome of the case also prosecuted the criminal contempt proceeding, and the Court of Appeals found that to be improper. The Supreme Court, however, held there was no prohibition against an attorney who represented a litigant from also prosecuting a criminal contempt proceeding, but also held that attorney's fees could not be taxed as costs where the contempt proceeding also benefited a litigant and was not simply to vindicate the court's authority.[2]

The court stated that fees incurred for the public records actions had previously been awarded against the County, and that all fees awarded for the appeal would also be taxed to the Sheriff as a governmental official of Knox County, and not individually. The Court then directed plaintiff's counsel to submit a fee application within 30 days in accordance with Local Rule 14.

Plaintiff then filed other motions, *inter alia,* a Motion asking the Court to amend the Order to extend the 30 day period for filing his fee application until after the Court ruled on the other pending motions.

Plaintiff then filed a Motion pursuant to Rule 52.02 and 59.04, asking the Court to set aside its November 18 Order, and to disqualify itself. Plaintiff stated that the Court had a bias in favor of Hutchison since he provided services and security to the Court, etc., and further alleged that the Court's bailiff quit in protest after the Court found Hutchison in criminal contempt, which could serve to make the Court fear further such reprisals. Plaintiff further asserted that the Judge was followed by Hutchison's "special investigative unit" after the criminal contempt finding.

In the meantime, defendant (in his official capacity) filed a Response to plaintiff's motions regarding attorney's fees, stating that plaintiff's counsel had never filed his fee application as directed by the Court. Defendant also filed an individual response, stating that the allegations contained in plaintiff's filings were "redundant, immaterial, impertinent or scandalous". He denied that his special investigative unit had been investigating the Court, along with an Affidavit of L. Keith Lyon, who stated that neither he, as supervisor of the special investigative unit, nor the sheriff had ever ordered or authorized any surveillance on a judge.

On March 15, 2006, plaintiff asked the Court for a one day extension to file the fee application, and stated the defendant's attorneys did not object. Plaintiff then

---

**2.** The Trial Court noted that Justice Birch had expressed the fear in *Wilson* that the interests of the private litigant and the State might not coincide, and stated that this case was "an example of Justice Birch's fears come true." The Court concluded that plaintiff's Petition for fees for prosecuting the criminal contempt

was denied, but that the plaintiff would be allowed one-half of his fees for the defense of the appeal, since plaintiff's counsel was specifically appointed for that purpose, and since the documents had been produced at that time, plaintiff no longer stood to benefit from defending the contempt proceeding.

filed a Motion for Protective Order, asserting that such was suggested by the Court at a hearing on January 30, 2006, because the case was still pending and plaintiff's counsel objected to filing his fee application, which he stated contained attorney/client privileged information and attorney work product. Knox County opposed the protective order, stating that the fee application should be a public record just as all the other records in this case. Plaintiff's counsel attached a copy of letters to and from the Knox County Law Director's Office, wherein the Law Director, in response to a request for detailed time records of Watson and Farmer, stated the attorney fee records would be produced, but the specific work detail would be redacted due to concerns over privilege and the disclosure of confidential information.

The Knoxville News–Sentinel then filed a Petition for Leave to Intervene, asking the Court to allow it to intervene on behalf of the citizens of Knox County, and to open the plaintiff's fee claims to the public, and deny the motion for protective order. Plaintiff filed yet another motion seeking to join Law Director Mike Moyers as a party defendant, based upon his policy that detailed attorney time records would not be disclosed.

On April 18, 2006, the Trial Court granted Plaintiff's Motion to Alter or Amend the Court's order of February 8, 2002, allowing the plaintiff to assert an attorney's fee claim under the Public Records Act against Knox County. Then, in an Order dated April 24, 2006, the other pending motions were denied, and plaintiff was once again directed to file a fee petition. Plaintiff then sought an extension of one week to file the fee and cost records. That request was denied by the Court. When no fee application had been filed by April 27, 2006, the defendant filed a Motion to

Deny Attorney Fees, asserting that plaintiff had repeatedly failed to file her fee application as directed by the Court.

Plaintiff then filed a Petition for Attorney's Fees, and a Motion for In Camera Inspection. The attached time records simply show the dates and total time spent on the case, with no detail other than a designation of whether the time was a court appearance, conference, research, etc.

On May 1, 2006, the Trial Court entered an Order denying plaintiff's motion to disqualify Watson from representing Knox County, ordering that the attorney's fee issue was all that remained, ordering plaintiff to file her fee petition within one week of April 18, 2006, and finding that the plaintiff's motion to join the law director as a party was moot. The Court entered another Order that date, finding that plaintiff's request to file the attorney's fee application under seal was denied. The Court noted that if any of the portions of the fees were asserted to be subject to privilege, those portions would be addressed in camera.

On June 1, 2006, the Trial Court entered a Memorandum Opinion and Order, wherein the Court stated that it had previously ruled that plaintiff was entitled to an award of attorney's fees in the Public Records Act case, and fees for the defense of the first appeal, and directed plaintiff's counsel to submit a proper fee application. The Court noted that plaintiff's counsel was given extensions of time within which to file the application, but then expressed concern over information contained therein that might be privileged. The Court stated that it had no objection to plaintiff's counsel providing information to defense counsel under a protective order and the parties working out the details, but the defense counsel voiced concerns about the Sunshine Law and the Public Records Act.

The Court stated that it had become obvious that the parties could not proceed in this manner, so the Court held further hearings, wherein Moody's attorney represented that he was working on the petition and "being as specific as I can be" and the Court had instructed him to file the same by March 15, 2006. The Court reiterated that on that date the plaintiff filed for a one day extension, and then on the next day, filed for a protective order.

The Court noted that plaintiff's motion for a protective order was denied at the hearing on April 18, 2006, and that counsel was reminded at that time that he had twice been previously ordered to submit his application. The Court stated that plaintiff was then given one week from that date to file the petition, but that plaintiff's counsel filed for another extension.

The Court stated that counsel was required to specify the activity he spent time on in detail because he needed to show that it was related to the issues/proceedings for which fees were granted. The Court noted that it had previously told counsel that he could submit any questionably privileged information for an in camera review, to determine if the information needed to be redacted, but that counsel then took the position that he did not have to provide any detail until the case was closed and the fees were paid.

The Court stated that counsel had the burden to prove whether the fees were reasonable and were related to the proceedings for which fees were granted, and that counsel had refused to provide the information to support his fees, and had chosen instead to "ignore this Court's orders and resort to disingenuous and or false statements to the Court in an effort to further this subterfuge." The Court stated that it had given plaintiff's counsel every opportunity to file a fee petition with the required information, but he had disregarded the orders of the Court, such that "to the extent that it is within the Court's discretion to award these fees this Court declines to do so." The Court concluded that plaintiff and her counsel had failed to submit the necessary information so that the Court could make a fee award pursuant to the statute, and he denied any attorney's fees on that basis.[3]

On appeal, the plaintiff has raised numerous issues which we set forth as follows:

1. Whether the Trial Court committed error on January 28 and February 8, 2002, by refusing to adjudicate factual disputes regarding whether Hutchison withheld records, and requiring Moody to file a Petition for Contempt to resolve the issue and obtain access to records?

2. Whether the Trial Court erred in denying Moody attorney's fees?

3. Whether Moody is entitled to attorney's fees for all litigation relating to obtaining access to public records, including contempt proceedings?

4. Whether the Trial Court erred by ordering Moody to file, litigate and prove attorney's fees prior to the completion of the case?

5. Whether the Trial Court erred by dismissing Moody IV, injunctive relief and two specifications of criminal contempt at a pretrial conference for a June 2006 trial on different issues?

6. Whether the Trial Court erred in denying Moody's Motion for Injunc-

---

**3.** At one point, the Trial Court portrayed the proceedings thusly: "The acrimony between counsel and parties is beyond accurate description. Only by presiding over this matter could one appreciate that restraint has seldom been considered throughout these proceedings."

tive Relief and to Supplement her Complaint as to New Events occurring after the first appeal, regarding Knox County hiring and paying private attorneys to represent Hutchsion?

7. Whether the Trial Court erred by not disqualifying Robert Watson, Jr., from representing Knox County at the same time Mr. Watson represented Hutchison personally?

8. Whether Hutchison should personally pay fines, attorney's fees, and court costs for his contempt?

9. Whether the trial Judge should have recused himself?

Plaintiff argues that, following the Trial Court's grant of her request for access to public records of defendant and the Court's announcement that the case was concluded, she filed a Rule 52.02 Motion, and a Rule 59.04 Motion. The Motion asserted that the Trial Court erred in failing to order defendant to produce the requested records, in failing to consider evidence that all of the requested records had not been produced, and in telling the plaintiff that she would have to file a contempt petition to enforce the order granting access, etc. However, plaintiff did file a Petition to Order defendant Hutchison to show why he was not in Contempt of Court.

After the contempt action was filed, tried, appealed, and the case remanded, a hearing was held, wherein plaintiff raised the issue of whether a final order had ever been entered regarding the above-referenced Motions. The Trial Court denied these Motions, along with a multitude of other motions, reserving only the issue of attorney's fees.

The Court noted that Moody's attorney had suggested that access to all of the requested records had not been provided, and that defendant had been ordered to produce the requested records, and counsel for both parties had been reminded of the procedures for enforcement of court orders, and the "remedies attendant thereto." The Court concluded by stating "Petitioner's request for access to public records of the defendant having been granted, this case is concluded."

Moody argues the Trial Court erred in its construction of the Public Records Act by finding that the relief available thereunder did not include resolving disputes, and required the filing of subsequent contempt petitions to enforce the order granting access. Moody further argues that Tenn.Code Ann. § 10–7–503(d) provides that the Court "shall render written findings of fact and conclusions of law and shall be empowered to exercise full injunctive remedies and relief to secure the purposes and intentions of this section, and this section shall be broadly construed so as to give the fullest possible public access to public records." Further, that Tenn. Code Ann. § 10–7–505(b) provides for the Court to review records being withheld, and asserts that the Court should have reviewed the records itself to resolve the factual disputes presented regarding whether the entire records were being produced. Moody further complains, that in refusing to allow discovery, she was unable to show Hutchison's false statements regarding the records (as it later did in the contempt proceedings). Moody concludes that these alleged errors unnecessarily increased delays, costs and attorney's fees in the case.

Tenn.Code Ann. § 10–7–505 has been described as "provid[ing] an enforcement mechanism to gain access to governmental records opened to the public by T.C.A. § 10–7–503." *Memphis Pub. Co. v. Holt,* 710 S.W.2d 513, 518 (Tenn.1986). Tenn. Code Ann. § 10–7–505(a) provides that if a citizen is denied access to any public rec-

ord by an official or his designee, the citizen may petition for access to the record and "obtain judicial review of the actions taken to deny the access." Tenn. Code Ann. § 10–7–505(b) provides that when a citizen files such a petition and requests it, the Court shall "issue an order requiring the defendant or respondent party or parties to immediately appear and show cause, if they have any, why the petition should not be granted." The section further provides that the Court may direct that the records being sought be submitted under seal for review by the Court. Tenn.Code Ann. § 10–7–505(c) states that the burden of proof for justification of nondisclosure shall be upon the official, and must be shown by a preponderance of the evidence. Tenn.Code Ann. § 10–7–505(d) provides the Court shall render written findings of fact and conclusions of law and "shall be empowered to exercise full injunctive remedies and relief to secure the purposes and intentions of this section, and this section shall be broadly construed so as to give the fullest possible public access to public records."

■ Moody argues the Court erred in "taking the word" of Hutchison that the records had been/would be produced, and requiring her to file for contempt, rather than holding an evidentiary hearing. The proper procedure would have been to have held an evidentiary hearing on the dispute. *Jackson v. Hackett,* 1990 WL 143238 (Tenn.Ct.App. Oct.3, 1990).[4] But the Court's action does not amount to reversible error, because Moody had an evidentiary hearing in the contempt proceeding regarding her claims that the full records were not produced and ultimately prevailed on those claims.

■ The fact that Moody was required to file a contempt petition to enforce the Trial Court's order did not impermissibly shift the burden of proof to Moody, as she claims, because the burden of proof relates to the official's justification of nondisclosure, and here, there was no such claim made. In other words, Hutchison did not argue that the records were non-disclosable, but acknowledged that the records were public and that Moody was entitled to access.

Tenn.Code Ann. § 10–7–505(g) states:

If the court finds that the governmental entity, or agent thereof, refusing to disclose a record, knew that such record was public and willfully refused to disclose it, such court may, in its discretion, assess all reasonable costs involved in obtaining the record, including reasonable attorneys' fees, against the nondisclosing governmental entity.

■ Pursuant to this statute, the Trial Court has discretion to award attorney's fees in a case such as this, where the Court found that defendant had willfully refused to disclose public records. As we have previously stated:

The statute is a limited award provision. The decision whether to award attorneys' fees under Tenn.Code Ann. § 10–7–505(g) is left to the discretion of the trial court, and appellate courts will not disturb that decision absent an abuse of that discretion.

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." A trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision

---

4. This case was later overruled by statute as regarding post-conviction proceedings, which

does not affect its relevance here.

which is against logic or reasoning or that causes an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*The Tennessean v. City of Lebanon*, 2004 WL 290705 (Tenn.Ct.App.2004) (citations omitted).

Plaintiff argues the Trial Court erred in failing to award her attorney's fees, and erred by ordering her to "litigate and prove attorney's fees prior to the completion of the case", citing *Knoxville News–Sentinel v. Huskey*, 982 S.W.2d 359 (Tenn. Crim.App.1998).

In *Huskey*, the issue was quite different. In that case, the criminal defendant was indigent and had court-appointed attorneys, who had submitted fee applications to the Court, that the Court had ordered held under seal. *Id.* The Knoxville News–Sentinel petitioned to intervene, and sought access to those fee applications, pursuant to the Public Records Act, and the Court granted access to the summary cover sheets which showed the total amounts paid to defense attorneys, but ordered that the detailed time sheets would remain sealed until the case was concluded. *Id.*

On appeal, Huskey asserted that the Supreme Court had ruled that documents in an active criminal case which would not be subject to discovery and inspection under Tenn. R.Crim. P. 16 were not subject to inspection under the Public Records Act. *Id.* The Court of Criminal Appeals stated that the cover sheets were subject to inspection, finding that Rule 16 was designed to protect materials connected to the substantive defense of a criminal prosecution. *Id.* The Court stated that while some of the detailed time entries might be protected since they might reveal confidential information, such as the names of po-tential experts and the subject of their research, the cover sheets did not reveal any such protected information. While that Court did state that there could be some confidential information contained in the detailed time entries that would be protected under Tenn. R.Crim. P. 16 as connected to the substantive defense of a criminal prosecution, it did not rule that detailed time entries were always confidential until the conclusion of a case, as the plaintiff asserts.

■ In this case, the detailed time entries were not provided, even though the Court told plaintiff's counsel that he could provide any potential privileged/work product information to the court for an in camera review to determine if the information needed to be redacted. Instead of complying, counsel flatly refused to provide the information, relying upon the fact that defense counsel was not required to disclose detailed time information. The fallacy of this position, is that defense counsel was not seeking an award of fees in this case, and the fact that such information was or was not routinely disclosed by defense counsel does not alter the fact that plaintiff had the burden of showing that the fees incurred in this case were reasonable, and were related to the matters for which fees were awarded. Also, it does not change the fact that Local Rule 14 requires a detailed billing statement be filed, in order to determine the reasonableness of the fee, pursuant to Supreme Court Rule 8.

The other fallacy in plaintiff's position is that this case was concluded, but for the award of fees. The defendant had been ordered to disclose the records sought, and had been found in criminal contempt for failing to comply and making false statements about the records.

"A trial court abuses its discretion only when it 'applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining.' The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court." *The Tennessean v. City of Lebanon, supra.* In this case, it was within the Trial Court's discretion whether to award fees, and the Trial Court did not abuse its discretion in refusing to award fees where trial counsel refused to provide the Court with the necessary information. The Court properly declined to award fees under the circumstances.

Plaintiff takes issue with the Trial Court's dismissal of Moody IV, as well as "two specifications of criminal contempt" remaining in Moody III.[5] But, as defense counsel points out, this is an appeal of Moody III, not Moody IV, which was a different case with a different docket number. If plaintiff wished to appeal the dismissal of that case, she could have done so.

Apparently, these "two specifications" which purportedly remained from Moody III, had to do with determining whether a document in possession of the Law Director's Office relating to Topside Road was a public record that should have been disclosed. These specifications were apparently severed from Moody III and were to be tried with Moody IV, which is another lawsuit under the Public Records Act seeking additional documents, including some related to Topside Road.

These specifications which had not yet been tried were dismissed by the Court at the hearing on April 18, 2006, where the Court stated that plaintiff's counsel had been directed to file a pleading specifically detailing the remaining issues in that case, but had failed to do so. The record shows that plaintiff's counsel did file a Memorandum on Pending Issues, which simply stated that "in 153315–2 both criminal contempt of court and civil contempt of court are pending pertaining to Topside Road." The Court replied:

> Counsel was directed to state the issues to supplant the pleadings in this case by a date certain. And on April the 10th, late, without a prior motion to enlarge the time, files a pleading, a memorandum on the pending issues, and it is clear, from his comment this morning, that this paper does not even approach what he thinks are pending issues in this case. The Court cannot manage its docket, cannot move these cases forward when counsel will not put down orders, will not comply with orders, will not state the issues.

The Court then dismissed Moody IV on its own motions, as well as the remaining specifications in Moody III.

Defendant argues that the Trial Court has broad discretionary authority to control its docket and the proceedings in the court, and relies on the authority of *Hessmer v. Hessmer,* 138 S.W.3d 901, 904 (Tenn.Ct.App.2003), where the Court said:

> Tennessee's trial courts possess broad discretionary authority to control their dockets and the proceedings in their courts. *Hodges v. Attorney General,* 43 S.W.3d at 921. They have the express authority to dismiss cases for failure to prosecute or for failure to comply with the Tennessee Rules of Civil Procedure or the orders of the court. Tenn. R. Civ. P. 41.02(1). These rules permit tri-

---

**5.** Moody filed two lawsuits against Hutchison, known as Moody I and Moody II, which were pending when this lawsuit seeking records under the Public Records Act (known as Moody III) was filed. Moody later filed a Petition to Obtain Access to Public Records, which became known as Moody IV, and was docketed as a separate case.

al courts, in their discretion, to dismiss complaints on their own motion for failure to prosecute, but this authority should be exercised sparingly and with great care. *Harris v. Baptist Mem'l Hosp.*, 574 S.W.2d 730, 731 (Tenn.1978); see also *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962) (adopting a similar interpretation for an analogous federal rule).

In *Hodges v. Attorney General*, 43 S.W.3d 918, 921 (Tenn.Ct.App.2000), this Court stated, "Because decisions to dismiss for failure to prosecute are discretionary, reviewing courts will second-guess a trial court only when it has acted unreasonably, arbitrarily, or unconscionably." Both *Hodges* and *Hessmer* dealt with the situation where a pro se litigant filed an action and then failed to appropriately prosecute same, which is not the case here.

In a case factually similar, the Court affirmed the trial court's dismissal of the plaintiff's claims due to his attorneys' failure to abide by the orders of the court regarding discovery. In *Kotil v. Hydra–Sports, Inc*, 1994 WL 535542, (Tenn.Ct. App. Oct.5, 1994), this Court stated:

> Trial judges possess inherent, common-law authority to control their dockets and the proceedings in their courts. Their authority is quite broad and includes the express authority to dismiss cases for failure to prosecute or to comply with the Tennessee Rules of Civil Procedure or the orders of the court. Dismissal is a harsh sanction, which is generally not favored in circumstances where lesser sanctions are available and where the neglect is more attributable to the attorney than the client.
>
> Appellate courts do not treat decisions to dismiss cases pursuant to Tenn. R. Civ. P. 37.02(C) or Tenn. R. Civ. P. 41.02(1) lightly. Our reaction to the seeming harshness of the sanction is, however, tempered by the recognition that trial judges must be able to control their dockets and that to do so, they must have available the most severe spectrum of sanctions not merely to penalize those whose conduct warrants sanctions but also to deter others who might be tempted to engage in similar conduct if the sanction did not exist. Accordingly, the imposition of the sanctions available under Tenn. R. Civ. P. 37.02(C) and Tenn. R. Civ. P. 41.02(1) are discretionary decisions. Appellate courts will not disturb these decisions in the absence of an affirmative showing that the trial court acted unreasonably, arbitrarily, or unconscionably.
>
> The trial court did not act arbitrarily or unreasonably in this case. By the time of the December 2 hearing, the trial court knew that discovery was still bogged down, that Mr. Kotil's attorneys had not fully complied with its order to disclose information with regard to Mr. Kotil's tax returns, expert witnesses, or computation of damages, and that Mr. Kotil's attorneys had not complied with the scheduling provisions of its trial management order. Of equal gravity, the trial court knew that Mr. Kotil's lawyers, despite the trial court's specific instructions to the contrary, had attempted to strike several motions and then had declined to appear at the hearing when these and other motions were scheduled to be heard. These circumstances provided the trial court with sufficient grounds under Tenn. R. Civ. P. 37.02(C) and Tenn. R. Civ. P. 41.02(1) to dismiss Mr. Kotil's case.

(Citations omitted).

This case has been pending for several years and has prolonged litigation as demonstrated by the record filed with this Court that now contains several volumes.

The record demonstrates many missed deadlines and numerous efforts to extend deadlines set by the Court for filing documents. Accordingly, we cannot say the Trial Court acted unreasonably, arbitrarily, or unconscionably in sanctioning plaintiff's counsel for failing to abide by the Court's directive in this instance by dismissing the two remaining specifications of contempt in this case.

Next, Moody argues it was error for the Trial Court to deny her motion to supplement her complaint, and her application for injunctive relief regarding the propriety of Knox County paying private attorneys to represent Hutchison. As to this issue, this Court has previously stated:

> The grant or denial of a motion to amend the pleadings in accordance with Tenn. R. Civ. P. 15.01 is within the sound discretion of the trial court, and "[o]nce decided, such matters are seldom adversely reviewed on appeal unless abuse of discretion has been shown...." *Wilson v. Ricciardi,* 778 S.W.2d 450, 453 (Tenn.Ct.App.1989).

The applicable standard is as follows:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott,* 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland,* 22 S.W.3d 266, 273 (Tenn.2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley,* 6 S.W.3d 243, 247 (Tenn.1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 927 (Tenn.1998).

*Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn.2001). *Also see, Poss v. Turner,* 2007 WL 187811 (Tenn.Ct.App. Jan.24, 2007).

■ In this case, there has been no showing of abuse of discretion. As we have previously recognized that when an amendment is sought after a lawsuit has been pending for a considerable period of time, there is a greater threat of prejudice to the other party and delay, especially where the sought amendment will add new claims and cause discovery to be reopened. *March v. Levine,* 115 S.W.3d 892 (Tenn.Ct. App.2003). At the stage of the litigation when this amendment was sought, the only remaining issues basically had to do with attorney's fees, as the substantive issues regarding the disclosure of documents had been litigated. We hold the Trial Court did not abuse its discretion in disallowing the amendments.

As to whether the trial court erred in failing to grant injunctive relief, we have previously stated:

> A temporary injunction may be granted during the pendency of an action if it is clearly shown by verified complaint, affidavit or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the action, or that the acts or omissions of the adverse party will tend to render such final judgment ineffectual. Tenn. R. Civ. P. 65.04(2). The following factors generally must be considered by the trial court when deciding whether to grant a preliminary injunction:
>
> (1) the threat of irreparable harm to the plaintiff if the injunction is not granted;
>
> (2) the balance between this harm and the injury that granting the injunction would inflict on defendant;

(3) the probability that plaintiff will succeed on the merits; and

(4) the public interest.

*Mosby v. Colson,* 2006 WL 2354763 (Tenn. Ct.App. Aug.14, 2006).

█ In this case, the Judgment had already been entered on the substantive issues, the only question remaining had to do with attorney's fees, and we find no merit in this issue.

Moody argues the Trial Court erred by not disqualifying Robert Watson from representing Knox County since he represented Hutchison individually on other cases pending at the time, and because an attorney in his firm had represented the Knoxville News–Sentinel when it sought disclosure of records by Hutchison in another case.

█ The disqualification issue is also reviewed under an abuse of discretion standard. *State v. Culbreath,* 30 S.W.3d 309 (Tenn.2000). Conflict of interest issues usually arise in the context of representation of multiple criminal defendants. As was explained in *Alexander v. State,* 2000 WL 66069 (Tenn.Crim.App. Jan.27, 2000):

> An actual conflict of interest is usually defined in the context of one attorney representing two or more parties with divergent interests. A test for determining a disqualifying conflict in that situation is whether the attorney "made a choice between possible alternative courses of action [that were] helpful to one client but harmful to the other." The term has been described as "a situation in which regard for one duty tends to lead to [the] disregard of another." In *Ford v. Ford,* 749 F.2d 681, 682 (11th Cir.), cert. denied, 474 U.S. 909, 106 S.Ct. 278, 88 L.Ed.2d 243 (1985), the court declared a conflict of interest when an "attorney was placed in a position of

divided loyalties." Once an actual conflict of interest is shown, disqualification is the appropriate remedy.

█ Moody argues it was improper for Watson to undertake representation of Hutchison in his official capacity, which, in effect, is the representation of Knox County, when he represents Hutchison in his individual capacity in other pending or past cases unrelated to this litigation. Plaintiff further charges that Richard Hollow, Watson's partner, represented the Knoxville News–Sentinel in unrelated litigation over public documents against Hutchison in his official capacity, and thus could not now represent Hutchison in that capacity. The argument goes that, Watson, as his partner, should not be allowed to represent Hutchison in that capacity either.

█ We have not been cited any cases mandating Watson's disqualification based upon these allegations. We believe that an attorney may undertake "multiple" or "successive" representation so long as there is no actual conflict of interest. *State v. Hoggett,* 1990 WL 172632 (Tenn. Crim.App. Nov.9, 1990). If an attorney is simultaneously representing clients with different interests ("multiple representation"), the Code of Professional Responsibility requires that the attorney may do so as long as he "reasonably believes the representation will not adversely affect the relationship with the other client, and each client consents in writing after consultation." Sup.Ct. R. 8, RPC 1.7. Such consultation requires "explanation of the implications of the common representation and the advantages and risks involved." *Id.* If an attorney is representing a client whose interests are adverse to a former client, then a conflict may arise if the cases are substantially related or if the attorney has divided loyalties or reveals privileged information gained from another client.

*See Hoggett, supra.* However, consultation and consent by the client are required. Sup.Ct. R. 8, RPC 1.9.

In this case, it was not shown that the disciplinary rules were violated. Watson filed an affidavit stating there was no conflict between his representation of Hutchison officially in this case and his representation of Hutchison individually in other (unrelated) cases. Hutchison's personal attorney, Dean Farmer, also filed an affidavit stating that he and his client consented to Watson's representation of Hutchison officially in this matter. Hollow also filed an affidavit, stating that he had never been retained by any client to file suit against Hutchison.

A "substantial relationship" exists between different representations if the interests of one are adverse to the interests of another, such that the lawyer could be regarded as "changing sides". *See Clinard v. Blackwood,* 46 S.W.3d 177 (Tenn. 2001). In this case, it has not been shown that the interests of Hutchison in his official capacity in this case are adverse to the interests of Hutchison in his individual capacity in the other cases. Moody argues that this creates an appearance of impropriety, and while disqualification has been ordered based on the appearance of impropriety, this Court has noted that "except in the rarest of cases, the appearance of impropriety alone is simply too slender a reed on which to rest a disqualification order." *Watson v. Ameredes,* 1997 WL 772865 (Tenn.Ct.App. Dec.10, 1997), quoting *King v. King,* 1989 WL 122981 (Tenn. Ct.App. Oct.18, 1989). The evidence in this case does not show that the trial court abused its discretion in refusing to disqualify Watson as an attorney in this case.

 Moody also raises an issue regarding whether Hutchison should personally pay the fines, attorney's fees, and court costs for his contempt. Moody asserts that it is against public policy for Knox County to pay fines/judgments based on Hutchison's wrongdoing.

This issue was addressed by this Court in the prior appeal. In that appeal, plaintiff raised the issue of whether Hutchison should be held personally responsible for fines, attorneys fees, court costs, etc. This Court stated, "We have affirmed the imposition of the $300 fine against Defendant in his individual capacity. We believe Defendant is personally responsible for payment of this fine and so hold. The question then becomes whether or not Knox County has authority to reimburse Defendant out of taxpayer dollars for the $300 fine. Based on Plaintiff's brief, it does not appear that Knox County actually has reimbursed Defendant for the $300 or that it definitively has decided to do so. Unless and until that happens, we do not believe this issue is ripe for review." *Id.* at 31. We went on to state that attorneys fees and costs had also not been assessed, and thus those issues were not ripe for review. *Id.*

We have already determined that Hutchison is personally responsible for payment of the fine. There has still been no showing that the fine was reimbursed to him via taxpayer funds, and there has been no award of attorneys fees or costs. As such, no ruling is required

Finally, plaintiff argues the Trial Judge should have recused himself, because recusal was necessary since the judge might have feared Hutchison's "obtaining a candidate to qualify to run against the Court during an election year". Further, Hutchison was an officer of the court and provided services and employees to the court, and because the Judge is a Knox County taxpayer and thus interested in the outcome of the litigation. This Court in *Irvin v. Johnson,* 1998 WL 382200 (Tenn.Ct.

App. July 10, 1998), dealt with the question of recusal of a sitting trial judge, stating:

> It is well settled in Tennessee that the question of recusal rests in the sound discretion of the trial judge and should not be reversed on appeal unless the record reveals a clear abuse of that discretion. *State, ex rel. Phillips v. Henderson,* 220 Tenn. 701, 423 S.W.2d 489 (1968). The question that must be considered, therefore, is whether, based on the record before us, Judge Walton's refusal to recuse himself amounts to an abuse of discretion.

> This court can find no abuse of discretion on the part of the trial judge in refusing to recuse himself. The whole basis of the recusal motion seems to be that the trial judge has decided the issues in this case and the issues in the previous litigation against the appellant. As further grounds, the appellant relies upon his own action in apparently filing a complaint before the Court of the Judiciary against the trial judge. He further relies on his apparent desire to call the trial judge as a witness. This latter point has been directly addressed by the Supreme Court of Tennessee and is held not to be a basis for recusal. *State, ex rel. Phillips v. Henderson,* 220 Tenn. 701, 707, 423 S.W.2d 489, 492 (1968). One of the leading cases in Tennessee on this subject provides a clear cogent and convincing answer to recusal in this case.

>> It is also insisted that the trial judge was personally prejudiced against defendant because of the facts which had transpired during the trial of the case of State v. J.E. White; also on the motion for continuance, and the motion for new trial. Several of the states of the Union have statutes upon this subject, laying down the rule that this will make a judge incompetent. We have no such statute; moreover, we doubt the policy of such legislation. It is entirely conceivable that an upright and honest judge may decide justly and impartially as between his bitter personal enemy and his warm personal friend, administering the rules of law without fear or favor. Such a situation should be left to the personal delicacy of the judge, and not be a matter of absolute law. It is easy to conceive that under the opposite rule an upright and impartial judge would often be recused by affidavits as to his personal prejudices against one party or the other, to the great detriment, embarrassment, and delay of the administration of justice. It is exceedingly easy for litigants and counsel to imagine that a judge is prejudiced against a party, or against his counsel, who has failed to successfully prosecute, or successfully defend, any one or more cases. It is an infirmity of human nature that counsel, whose feelings and personal interests are deeply enlisted in every important case they try, are frequently unable to attribute want of success to the inherent weakness of the case, or to their own shortcomings in the management of it. It is a matter of general knowledge among lawyers that the refuge of defeated counsel is far too often abuse of the court, referred to pithily by lawyers as "cussin' the court." When the tide turns, and success crowns the effort of previously disappointed counsel, his opinion of the intelligence, learning, and probity of the court experiences a high, upward tendency. To allow personal feelings like these on the part of counsel to determine what judge shall try a case, it seems to us, would be disastrous. The new judge selected might not meet the approval of the counsel of the other

side, and he would also have to be recused, and so on, resulting in a scramble, undignified and humiliating.

*In re Cameron*, 126 Tenn. 614, 649, 151 S.W. 64, 74 (1912).

 Under Tennessee Supreme Court Rule 10 Cannon 3 C, a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned. *Irvin v. Johnson*, 1998 WL 382200 (Tenn.Ct.App. July 10, 1998).

Plaintiff's objections are based on wild allegations and conjecture, and present no factual basis upon which the Trial Court's impartiality might reasonably be questioned. Accordingly, the Trial Judge did not abuse his discretion in refusing to recuse himself in this case.

In conclusion, we are constrained to observe, after reviewing this record, that it is appropriate for an advocate to forcefully and zealously represent his or her client, but we know of no circumstances where it would serve the client's best interest for the advocate to blatantly refuse to comply with a Court's reasonable and lawful orders.

For the foregoing reasons, we affirm the Trial Court's Judgment and remand, with the costs of the appeal assessed to Wanda Moody.