IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE

**ROBERT STARBUCK NEWSOM a/k/a ROBBY STARBUCK v.
TENNESSEE REPUBLICAN PARTY, ET AL.**

**Appeal from the Chancery Court for Davidson County
No. 22-0735-IV      Russell T. Perkins, Chancellor**

_____

**No. M2022-00735-SC-R10-CV**

_____

Plaintiff Robert Starbuck Newsom a/k/a Robby Starbuck sought to be a Republican candidate for Tennessee's 5th Congressional District for the United States House of Representatives. The Tennessee Republican Party and the Tennessee Republican Party State Executive Committee ("Defendants"), acting under relevant statutory authority and party rules, determined that Mr. Starbuck was not a bona fide Republican and informed the Tennessee Coordinator of Elections of the decision to exclude Mr. Starbuck from the ballot. Mr. Starbuck initially sought relief in federal court and failed to obtain injunctive relief. After voluntarily dismissing his federal action, Mr. Starbuck filed a complaint in the Davidson County Chancery Court alleging, among other things, that Defendants violated the Tennessee Open Meetings Act by determining in a non-public meeting that he was not a bona fide Republican. The chancery court granted Mr. Starbuck a temporary injunction on the basis that Defendants violated the Tennessee Open Meetings Act and ordered that Mr. Starbuck be restored to the ballot. Defendants filed an application for extraordinary appeal under Tennessee Rule of Appellate Procedure 10. This Court assumed jurisdiction over the appeal pursuant to Tennessee Code Annotated section 16-3-201(d) and Tennessee Supreme Court Rule 48 and granted the application for extraordinary appeal. We conclude that the trial court erred by granting the injunction because the Tennessee Open Meetings Act does not apply to Defendants. We vacate the injunction and remand to the trial court.

**Tenn. Code Ann. § 16-3-201(d) Appeal; Judgment of the Trial Court
Vacated; Case Remanded to the Trial Court**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which ROGER A. PAGE, C.J., and SHARON G. LEE, HOLLY KIRBY, and SARAH K. CAMPBELL, JJ., joined.

Eric G. Osborne, Lauren Z. Curry, Christopher C. Sabis, Mark Alexander Carver, Micah N. Bradley, Nashville, Tennessee, for the plaintiff Robby Starbuck.

Joshua A. Mullen, Nashville, Tennessee, for the defendants Tennessee Republican Party and Tennessee Republican Party State Executive Committee.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Janet M. Kleinfelter, Deputy Attorney General for non-party petitioners Tre Hargett, in his official capacity as Tennessee Secretary of State, and Mark Goins, in his official capacity as Tennessee Coordinator of Elections.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Robert Starbuck Newsom a/k/a Robby Starbuck ("Mr. Starbuck") filed a nominating petition seeking to be placed on the ballot for the Republican primary for Tennessee's 5th Congressional District for the United States House of Representatives. The Tennessee Republican Party, through the Tennessee Republican Party State Executive Committee ("TRP SEC"), subsequently determined, pursuant to its authority under Tennessee Code Annotated sections 2-5-204 and 2-13-104, that Mr. Starbuck was not a bona fide Republican, and, as a result, would not appear on the ballot.

Mr. Starbuck initially filed an action in federal court but voluntarily dismissed his claims after failing to obtain any injunctive relief. *See Newsom v. Golden*, No. 3:22-CV-00318, 2022 WL 1500860 (M.D. Tenn. May 12, 2022). Mr. Starbuck then filed a complaint in the Davidson County Chancery Court against the Tennessee Republican Party and the TRP SEC for declaratory and injunctive relief, along with a motion for a temporary injunction. Mr. Starbuck alleged that Defendants violated the Tennessee Open Meetings Act ("TOMA"), Tenn. Code Ann. § 8-44-101 to -111 (2016 & Supp. 20201), by determining in a non-public meeting that he is not a bona fide Republican.[1] On the evening of June 3, 2022, the trial court issued an order finding that Defendants had violated TOMA and ordering that Mr. Starbuck be restored to the ballot as a Republican candidate for the 5th Congressional District.

On June 6, 2022, Defendants sought review of the trial court's June 3, 2022 order by filing in the Court of Appeals an application for extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. Defendants requested expedited review and also filed an emergency motion to stay the injunction pending appeal pursuant to Rule 7 of the Tennessee Rules of Appellate Procedure. The Court of Appeals ordered Mr. Starbuck to file an answer to the application for extraordinary appeal and motion for stay, which he timely filed on June 7, 2022.

---

[1] His complaint also included claims for breach of contract and promissory estoppel, but those claims are not at issue in this appeal.

Also on June 7, 2022, non-parties Tre Hargett, in his official capacity as Tennessee Secretary of State, and Mark Goins, in his official capacity as Coordinator of Elections for the State of Tennessee (collectively "the State Officials"), filed in the Court of Appeals a petition for a common law writ of certiorari and supersedeas, requesting that the Court of Appeals vacate the trial court's June 3, 2022 order.

That same day, June 7, 2022, Defendants filed in this Court a motion pursuant to Tennessee Code Annotated section 16-3-201(d) and Tennessee Supreme Court Rule 48 asking this Court to assume jurisdiction. The following day, Mr. Starbuck filed a response in opposition to the motion. On June 8, 2022, this Court granted Defendants' motion to assume jurisdiction over the application for extraordinary appeal, motion to stay, and the State Officials' petition.[2] This Court also granted Defendants' request for expedited review but allowed Mr. Starbuck the opportunity to file a response to the State Officials' petition. After this Court assumed jurisdiction, the State Officials filed an amended petition for a common law writ of certiorari and supersedeas in this Court. On June 9, 2022, Mr. Starbuck timely filed a response to the State Officials' petition.

On June 9, 2022, this Court granted the application for extraordinary appeal and ordered that the matter be submitted to the Court for decision without further briefing or oral argument. We now issue our decision.

## STANDARD OF REVIEW

"The trial court's decision to grant the plaintiffs' request for a temporary injunction is discretionary and is reviewed under an abuse of discretion standard." *Fisher v. Hargett*, 604 S.W.3d 381, 395 (Tenn. 2020). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Id.* (quoting *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 305-06 (Tenn. 2020)). "Whether the trial court applied an incorrect legal standard is a question of law and is reviewed *de novo* with no presumption of correctness." *Id.*

## ANALYSIS

This interlocutory appeal arises from the trial court's grant of a temporary injunction. Rule 65.04(2) of the Tennessee Rules of Civil Procedure provides:

---

[2] Upon the motion of a party, this Court may assume jurisdiction over a case of unusual public importance in which there is a special need for expedited decision and that involves the right to hold public office. Tenn. Code Ann. § 16-3-201(d) (2021). Cases involving the right to hold public office include cases involving candidates for public office. *See, e.g., Wallace v. Metro. Gov't of Nashville*, 546 S.W.3d 47 (Tenn. 2018) (assuming jurisdiction over an appeal filed by a candidate for mayor).

A temporary injunction may be granted during the pendency of an action if it is clearly shown by verified complaint, affidavit or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the action, or that the acts or omissions of the adverse party will tend to render such final judgment ineffectual.

Tenn. R. Civ. Pro. 65.04(2) (2021).

Like the federal courts, Tennessee trial courts consider four factors in determining whether to issue a temporary injunction: "(1) the threat of irreparable harm to the plaintiff if the injunction is not granted; (2) the balance between this harm and the injury that granting the injunction would inflict on defendant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest."

*Fisher,* 604 S.W.3d at 394 (quoting *Moody v. Hutchison*, 247 S.W.3d 187, 199-200 (Tenn. Ct. App. 2007)). If a plaintiff cannot show a likelihood of success on the merits, that factor is typically determinative. *See id.*

Mandatory injunctions—which, as here, alter the status quo and order a defendant to take action—are extraordinary in nature and should be granted only in exceptional circumstances. *Id.* at 394-95 (citing *Cole v. Dych*, 535 S.W.2d 315, 322 (Tenn. 1976); *King v. Elrod*, 268 S.W.2d 103, 106 (Tenn. 1954)). Indeed, as we recently explained, "there is no power the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion or is more dangerous in a doubtful case" than the discretion of granting an injunction. *Moore v. Lee,* __S.W.3d.__, No. M2022-00434-SC-RD-CV (Tenn. 2022) (quoting *Mabry v. Ross,* 48 Tenn. 769, 774 (1870)).

Here, Defendants argue that the trial court erred in determining that TOMA applies to the TRP SEC. We agree. Title 2 of the Tennessee Code governs the elections of this state and provides that each political party shall have both a "state executive committee" and a "state primary board." Tenn. Code Ann. §§ 2-13-102, 2-13-103 (2014). Various statutory provisions in Title 2 describe the responsibilities of the state executive committees, while other statutory provisions set forth the responsibilities of the state primary boards. *Compare* Tenn. Code Ann. § 2-13-114(a) (2014) (the state executive committees for the parties are urged to jointly establish a calendar of appearances in each county enabling their gubernatorial candidates to appear together); Tenn. Code Ann. § 2-13-110 (2014) (nominating petitions shall be filed by the secretary of state with, among others, the chair of the state executive committee of the candidate's party); Tenn. Code Ann. § 2-13-204(b)(1) (2014 & Supp. 2021) (if a political party's candidate becomes unavailable and the office is to be filled by the voters of the entire state, the party's state executive committee shall determine the method of nomination); Tenn. Code Ann. § 2-10-

203(c)(1) (2014 & Supp. 2021) (the state executive committees shall submit nominees for the registry of election finance); Tenn. Code Ann. § 2-14-202(d) (2014 & Supp. 2021) (under certain circumstances, when there is a state senate vacancy, the state executive committee may nominate candidates); *with* Tenn. Code Ann. § 2-17-104 (2014) (candidates shall file any written notice contesting the results of a primary election with the state primary board for their party and the state primary board shall hear and determine the contest); Tenn. Code Ann. § 2-12-103(b)(3) (2014 & Supp. 2021) ("When members of another statewide political party are required to be appointed to a county election commission, they shall be nominated by the party's state primary board."); Tenn. Code Ann. § 2-6-503 (2014) (the state primary boards shall certify the nominees of their parties to the county election commissions); Tenn. Code Ann. § 2-5-208(j) (2014 & Supp. 2021) ("Each state primary board shall prescribe a color for its party's primary ballots which shall be uniform throughout the state and different from every other party's.").

The plain language of the statutory scheme in Title 2 demonstrates that state executive committees and state primary boards are distinct entities with distinct responsibilities. Under Title 2, only the state primary boards, not the state executive committees, are required to comply with TOMA. *See* Tenn. Code Ann. § 2-13-108(a)(2) (2014) ("Meetings of each state primary board shall be open and subject to title 8, chapter 44."); *see also* Tenn. Code Ann. § 2-1-113 (2014) (the meetings of boards and commissions established under Title 2 shall be open).[3] Thus, the determinative issue is whether the TRP SEC was acting as a state primary board (subject to TOMA) or a state executive committee (not subject to TOMA) when it determined in a non-public meeting that Mr. Starbuck was not a bona fide Republican.

Tennessee Code Annotated section 2-13-104 provides that "a party may require by rule that candidates for its nominations be bona fide members of the party." Under Tennessee Code Annotated section 2-5-204(b)(2), a party's *state executive committee* makes the determination of whether a candidate is a bona fide member of the party. Thus, the TRP SEC, by statute, was acting as a state executive committee, and not a state primary board, when it determined that Mr. Starbuck was not a bona fide Republican. As a result, the TRP SEC did not violate TOMA by making that determination in a non-public meeting because it was not required to comply with TOMA.

In finding a TOMA violation, the trial court ruled that state executive committees and state primary boards are "synonymous" under Title 2. We disagree. The statutory scheme clearly provides for and distinguishes between state executive committees and state primary boards, and it confers upon each distinct entity differing obligations and responsibilities. *See Hathaway v. First Fam. Fin. Servs., Inc.,* 1 S.W.3d 634, 640 (Tenn.

---

[3] The trial court did not find, and Mr. Starbuck has not argued on appeal, that Defendants are a "governing body" of a "public body" required to have public meetings under TOMA, Tenn. Code Ann. § 8-44-102 (2016 & Supp. 2021).

1999) ("The fact that the General Assembly did not use the same defined term demonstrates that it did not intend for that definition to apply to establish the second variable.") (citing *State v. Lewis,* 958 S.W.2d 736, 739 (Tenn. 1997)); *State v. Strode*, 232 S.W.3d 1, 11–12 (Tenn. 2007) ("This Court presumes that the General Assembly used each word in a statute deliberately, and that the use of each word conveys a specific purpose and meaning."). The trial court correctly recognized that Tennessee Code Annotated section 2-13-102(a) provides that each party's state executive committee "shall be" the state primary board for that party. Tenn. Code Ann. § 2-13-102(a) ("Each political party shall have a state executive committee which shall be the state primary board for the party."). But this single statute must be read in the context of all of the statutes defining the duties of each entity. It does not render these distinct entities synonymous. It means only that the members of the state executive committee also shall serve as the members of the distinct and separate state primary board. "[S]tatutes should not be interpreted in isolation. The overall statutory framework must be considered, and '[s]tatutes that relate to the same subject matter or have a common purpose must be read *in pari materia* so as to give the intended effect to both.'" *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 846 (Tenn. 2019) (quoting *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015)). When considered as a whole and read *in pari materia*, the statutory provisions in Title 2 plainly distinguish between state executive committees and state primary boards. Indeed, the trial court recognized as much when it noted that the state executive committee and the state primary board "often function as two bodies."

The trial court further determined that whenever a state executive committee acts under powers granted to it under Title 2, it is acting as a state primary board because Tennessee Code Annotated section 2-13-102(b) provides that "[t]he state primary board shall perform the duties and exercise the powers required by this title for its party." Again, we disagree and conclude that this determination results from reading the statute in isolation. Section 2-13-102(b) simply means that a party's state primary board shall perform the duties and exercise the powers required *of state primary boards*. Section 2-13-102(b) does not confer on the state primary boards any duties or powers that are instead expressly conferred by other statutes on the state executive committees.[4]

---

[4] The trial court also reasoned that applying TOMA to the state executive committees is in keeping with the remedial purposes of TOMA, and that this is especially true here because a primary is mandatory for the U.S. House of Representatives under Tennessee Code Annotated section 2-13-202. However, this reasoning fails to recognize that the clear, specific language of Title 2 concerning the obligations and functions of state executive committees and state primary boards takes precedence over the general remedial purposes of TOMA. *See, e.g.*, *State v. Davis*, 173 S.W.3d 411, 415 (Tenn. 2005) ("Lastly, specific statutory language will control over general statutory language."); *Washington v. Robertson Cnty.*, 29 S.W.3d 466, 475 (Tenn. 2000) (holding that a more specific statutory provision applies over a more general one); *State v. Cauthern*, 967 S.W.2d 726, 735 (Tenn. 1998) (citation omitted) ("As a matter of statutory construction, a specific statutory provision will control over a more general statutory provision."). The fact that a primary is mandatory is irrelevant to the proper analysis on this issue.

For the reasons stated above, we hold that the trial court erred as a matter of law in declaring that Defendants violated TOMA by deciding in a non-public meeting that Mr. Starbuck was not a bona fide Republican. As a result, we hold that the trial court erred in granting the temporary injunction. All other issues raised by the parties and the State Officials are pretermitted.

## CONCLUSION

The order of the trial court granting Mr. Starbuck a temporary injunction is vacated, and the case is remanded to the trial court for further proceedings consistent with this opinion. The Appellants' motion to stay the injunction pending appeal, as well as the State Officials' petition for a common law writ of certiorari and supersedeas, are denied as moot.

This Opinion is not subject to rehearing under Tennessee Rule of Appellate Procedure 39, and the Clerk is directed to certify this Opinion as final and to immediately issue the mandate. Costs on appeal are taxed to Mr. Starbuck, for which execution may issue if necessary.

_____
JEFFREY S. BIVINS, JUSTICE