# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 22, 2013 Session

## JANE DOE v. KNOX COUNTY BOARD OF EDUCATION ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 3-19-09     Wheeler A. Rosenbalm, Judge**

---

**No. E2012-00757-COA-R3-CV-FILED-APRIL 29, 2013**

---

This action against David Higgins ("the Instructor") and his employer, the Knox County Board of Education ("KCBE"), is based upon events that occurred while the plaintiff Jane Doe[1] ("the Student") was a freshman ROTC[2] student at West High School in Knoxville. In simple terms, the Instructor allowed the Student and other female ROTC students to drink alcohol to the point of intoxication and, while they were intoxicated, he persuaded them to expose their breasts. The Student reported the episodes to the school and her parents when the Instructor's demands escalated to the point that he repeatedly encouraged the Student to allow him to film her and others in a sexual "threesome." The case went to trial. The claims against the Instructor were tried to a jury. The claims against KCBE pursuant to the Governmental Tort Liability Act ("the GTLA") were heard simultaneously by the trial court. The jury awarded the Student damages against the Instructor in the amount of $65,000 for negligent infliction of emotional distress. It rejected the claim of intentional infliction of emotional distress. The portion of the court's judgment pertaining to the claims against the Instructor is not at issue in this appeal. The trial court determined that KCBE was not liable for the Instructor's actions because the court concluded he was acting outside the scope of his employment. The court further determined that there was no negligence upon which liability as to KCBE could be imposed. After the judgment was entered, the Student learned that the trial judge's wife was a retired employee of KCBE. On that basis, the Student moved the court to recuse itself and award her a new trial. The court denied the Student's post-trial motion. The Student appeals only as to the claims against KCBE. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

---

[1]We continue the practice, initiated at the trial court level, of hiding the identity of the plaintiff who was a minor when the events at issue occurred.

[2]Reserve Officers' Training Corps.

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Andrew C. Clarke, Memphis, Tennessee, for the appellant, Jane Doe.

Susan E. Crabtree and Amy S. Hickerson, Knox County Law Director's Office, Knoxville, Tennessee, for the appellee, Knox County Board of Education.

**OPINION**

I.

A.

KCBE hired the Instructor as an ROTC instructor at West in 1998. The Instructor did not have a college degree nor was he certified or licensed to teach; but the regulations of the Tennessee Department of Education did not require ROTC instructors to be licensed or certified. The Instructor was, however, certified by the United States Navy as a qualified ROTC instructor. Navy certification is based upon interviews and an extensive review of the person's military record to determine his or her fitness to be an instructor. The Navy certified instructors then undergo a training program that includes appropriate instructor-student interactions.

KCBE has, in the past, experienced instances of inappropriate relationships between teachers and students. It has received approximately thirty complaints over a period of approximately five years. KCBE has enacted several policies designed to prevent abuse of that relationship. One policy prohibits harassment of students "for any reason" and provides discipline against any student who engages in harassment. A more detailed policy prohibits "harassment, intimidation and bullying" of students by "administrators, faculty, staff and volunteers" as well as "a pupil exercising power and control over another pupil . . . ." Another KCBE policy regulates "off-campus trips" such as trips to the beach. Basically, it requires prior written approval of such trips. Yet another policy regulates the use of school buildings and property by requiring an application and prior approval. Finallly, KCBE has a policy that requires staff members to "use good judgment in their relationships with students beyond their work responsibilities and/or outside the school setting." Romantic relationships with students are prohibited. Staff members must also "avoid excessive informal and social involvement with individual students."

KCBE's employment policies include an orientation process during which employees are schooled in KCBE policies, including those aimed at preventing abuse of students by

teachers. Once employment starts, an employee is expected to undergo an evaluation partly directed at preventing abuse. The Instructor did not go through the orientation process, nor was he ever formally evaluated in his years at West. He was informally evaluated on a regular basis.

All ROTC classes at West High School are conducted in the Agee building. The Agee building is connected to the main school complex by a walkway. Students can enter the Agee building without going to or through the main school complex. The Agee building has classrooms, a gymnasium, showers, and an "armory." The armory is primarily used for storage of ROTC equipment. There are cameras in the gymnasium that would allow monitoring of the area by school security and the principal. The school principal does not routinely monitor the cameras.

The Instructor operated under the belief that he could use the Agee building anytime for ROTC purposes unless the building or a part of it was reserved for another activity. He routinely used the building after school hours for ROTC training, competitions, field trips and color guard. He believed that he did not need permission to use the building after hours and was never told that use of the building after hours was against school policy. The Instructor ran his ROTC classes like military boot camp. He instructed his students in the military way of life, including rank, structure, and obedience. He was a strict disciplinarian. His discipline included "hollering," forced exercise, and busy work such as shining shoes.

The Student enrolled as a 14-year-old freshman at West in 2004. She took the ROTC classes that were available to a freshman. The Student had met the Instructor through her older brother before she enrolled in ROTC. He was an ROTC student. According to the Student, she observed the Instructor treating the female students differently from the male students in several ways. Female students would sit on the Instructor's lap in the gymnasium. Further, the Instructor would allow female students (1) to get away with cursing, and (2) to cheat in competitions. Furthermore, he would promote female students who did not score well enough to be promoted. The Student believed that she received preferential treatment at the hands of the Instructor. He would allow her to enter restricted areas without permission and permit her to "hang out" in his office and disregard chores. She was not required, as were other students, to shine her shoes in the classroom. The Student believed that the Instructor's superior, Commander Sherer, observed her preferential treatment.

During the Student's freshman year, the Instructor arranged a "sleepover" in the Agee building for the night before a class trip departed in the early morning hours to Panama City, Florida. The Instructor was the only adult in the building the night of the sleepover. He disabled the cameras in the gym on this occasion. The Instructor had mentioned to the assistant principal that he might have a sleepover. The assistant principal said he did not

think it was a good idea, but did not tell the Instructor he could not have the planned sleepover. The Instructor did not obtain permission to use the Agee building for the sleepover.

The Student did not go on the trip, but she did participate in the sleepover. The Student arrived at the sleepover knowing that alcohol was going to be available. When she arrived at the Agee Building with her brother, she went into one of the back restrooms with two other females. They immediately began drinking whiskey and continued until they became intoxicated. The Instructor "caught" the girls and told them to not let the boys know they were drinking.

Later that night, the Instructor made a "bet" with one of the intoxicated females that she would not run across the gym floor topless. The reward for winning the bet was to go "down in ROTC history." The three intoxicated females took the bet. The Instructor then provided the rules.

> He came up to us and told us to remove our tops and our bras and to stand – we were going to run backwards across the gym, and to interlock arms so that we could cover ourselves. . . And he made all the boys stand . . . at one end of the gym, we were at the other. And he stood in the middle, halfway down the gym.

The three girls continued during the night to retreat to the bathroom to drink more whiskey. Sometime during the night, the Instructor engaged several of the students in a game of truth or dare. It is unclear whether male students were also involved. The Instructor dared the Student and another female to kiss, which they did. He dared another female to do topless push-ups, which she did. He dared the three females that had been involved in the bet to "flash" him for allowing them to drink. The females complied.

The Student did not immediately report the Instructor's actions to her parents or anyone at the school. She later testified that she was not aware of any rumors around the school of female ROTC students being topless.

Also during the Student's freshman year, while the Student was serving what is known as "time-for-time" to make up for lost time in class, the Instructor took the Student and another female into a back room where he gave them cigarettes and rum. After they became intoxicated, the Instructor asked them to make a videotape of them flashing the camera. The girls complied. Afterward, the Instructor drove the girls to someone's

apartment. No other faculty member or parent was informed of what happened during either the sleepover or the makeup time.

The Instructor then began asking the Student to make a video for him of a "threesome." After several such requests, the Student reported the Instructor to her mother and KCBE. The Instructor was immediately placed on administrative leave. He was told to stay off school property and not to have contact with students pending the investigation. The Instructor violated these restrictions by recruiting a student to find and destroy the offending videotapes. Apparently the student was unsuccessful because the Instructor's replacement discovered these and other inappropriate materials, including commercial pornography, hidden behind a shelf in the Agee Building.

During the trial, the Instructor gave the following testimony concerning whether he knew that his actions were wrong, even without special training or orientation:

> Q:     You had a duty to take care of those kids that night, didn't you?
>
> A:     Yes, ma'am.
>
> Q:     And did you fail in that duty?
>
> A:     Yes, ma'am.
>
> Q:     And do you think maybe that's the reason why you're supposed to let your superiors know, so they can keep you from that kind of failure?
>
> A:     Yes, ma'am.
>
> Q:     And so do you now think that you should have gotten permission?
>
> A:     Yes, ma'am.
>
> Q:     Do you think it would have been granted, for a grown man to spend the night with boys and girls, overnight, youngsters, high school age kids? Do you think that the Board of Education would have said yeah, that's a great idea?
>
> A:     No, ma'am.

* * *

Q:     Does the Knox County Board of Education [have] to train you not to engage in illegal acts?

A:     No, ma'am.

Q:     And having a minor destroy evidence is an illegal act, is it not?

A:     Yes, ma'am.

Q:     And sexual exploitation of a minor is an illegal act, is it not . . . ?

A:     Yes, ma'am.

Q:     And contributing to the delinquency of a minor is an illegal act, is it not?

* * *

A:     Yes, ma'am.

Q:     So, the Board didn't need to train you not to have girls running across the gym without their tops on?

A:     Correct.

Q:     And the Board didn't need to train you not to have some poor girl do topless pushups?

A:     Correct.

The Student received medical treatment and counseling. She was diagnosed with post-traumatic stress disorder, anxiety and depression related to her interactions with the Instructor.

-6-

B.

After reaching the age of majority, the Student filed this action. As amended and later modified by agreed order, the complaint named KCBE and the Instructor as defendants. The complaint seeks to impose liability on KCBE pursuant to the GTLA, Tenn. Code Ann. § 29-20-101, *et seq*. (2012). The complaint alleges that the Instructor acted within the course and scope of employment. The complaint also alleges that KCBE was negligent in hiring, training and failing to monitor the Instructor after hiring him. The complaint accuses the Instructor of both negligent and intentional infliction of emotional distress.

The case went to trial, with the jury hearing the claims against the Instructor and the court hearing the GTLA claims. The jury found that the Instructor was not liable for intentional infliction of emotional distress but was liable for negligent infliction of emotional distress. The jury awarded damages of $65,000. Immediately after hearing the jury's verdict, the court announced its decision on the GTLA claims.

> . . . [KCBE] is immune from suit for any kind of liability except as provided by the [GTLA]. And it is clear by the terms of that act, and particularly the section of the Tennessee Code that I referred to momentarily ago that the School Board's immunity is waived or removed for any injury proximately caused by a negligent act or omission of any employee within the scope of his employment except in certain instances that are not covered by that waiver of immunity.
>
> And so the lawsuit by this plaintiff against [KCBE] must generally be decided according to traditional notions of the negligence law of our state. The Court finds that the negligence attributed to [the Instructor] by the jury and the lawsuit against [the Instructor] appears to be warranted by the proof in the case.
>
> But the Court concludes that any negligence on the part of [the Instructor] is not such that it would cause liability to be imposed on [KCBE]. The mischief which is attributed to [the Instructor] and for which he's liable in this lawsuit were in the nature of criminal actions or activities and conduct, and clearly in the opinion of this court were not within the course or scope of his employment as a junior ROTC instructor for [KCBE]. And so

any negligence on the part of [the Instructor] is not sufficient to warrant a finding that the school board is liable to [the Student].

That leaves, then, for decision the question of whether [the Student has] established that any other employee of [KCBE] was negligent in the performance of their duties such that any negligent act or omission on their part could give rise to liability against [KCBE]. It appears to the Court after very careful consideration of all the evidence in this case, much of which is . . . highly disputed, but after considering the witnesses that have testified and the various accounts they have presented to the Court and making the appropriate determinations about their credibilities, the Court is constrained to conclude in the final analysis that [the Student] has not established by a preponderance of the evidence that any other employee of [KCBE] was negligent such – or that the negligence of such employee proximately caused any injury or loss or damage for which the [Student] has brought this lawsuit.

Succinctly stated, it is the opinion of the Court that before [KCBE] could be responsible for any negligence in the hiring or retention or supervision of [the Instructor], it is necessary for [the Student] to come forth with evidence to show that the school board either knew about the mischief which he was conducting or that they should have known about that.

The court entered judgment consistent with the jury's verdict and its own findings. The Student moved the court to alter or amend the judgment. While the motion was pending, the Student's attorney received an anonymous letter advising that the trial judge's wife was a past employee of KCBE where she had been employed for approximately 20 years. The Student supplemented her motion asking that the trial judge recuse himself and grant a new trial for his failure to disclose his wife's former employment with KCBE. KCBE filed a response supported with an affidavit stating that Betty Rosenbalm, wife of Judge Rosenbalm, worked "as an administrative secretary in the central office for 20 years and retired effective October 1, 2008." She was one of approximately 125 administrative secretaries. She never worked as an employee at West. At retirement, her pay came from "the Knox County Asset Accumulation Plan" such that she had no economic interest in the outcome of the case. The Student's motion for recusal and new trial was denied in the same order which denied the motion to alter or amend. The Student filed a timely notice of appeal.

II.

The Student raises the following issues, as taken verbatim from her brief:

[Whether] [t]he trial court failed to properly disclose that his wife was employed by [KCBE] during the relevant time period, requiring a new trial.

[Whether] [t]he trial court erred in failing to find [KCBE] liable for its own negligent conduct and/or the negligent conduct of [the Instructor].

[Whether] [t]he trial court erred in finding that [the Instructor's] actions were performed outside the course and scope of his employment . . . .

III.

This Court has repeatedly stated that

in Tennessee . . . the question of recusal rests in the sound discretion of the trial judge and should not be reversed on appeal unless the record reveals a clear abuse of that discretion.

*Moody v. Hutchinson*, 247 S.W.3d 187, 202 (Tenn. Ct. App. 2007)(*quoting Irvin v. Johnson*, No. 01A01-9708-CV-00427, 1998 WL 382200 at *2 (Tenn. Ct. App. M.S., filed July 10, 1998)). The question of "[w]hether an employee is acting within the scope of his or her employment is a question of fact." *Hughes v. Metropolitan Gov't of Nashville*, 340 S.W.3d 352, 361 (Tenn. 2011). Similarly, the questions of notice, constructive notice, and causation are questions of fact. *See Beske v. Opryland USA, Inc.*, 923 S.W.2d 544, 545-46 (Tenn. Ct. App. 1996)(notice and constructive notice); *Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005)(causation). As the Supreme Court observed in *Hughes*:

. . . [T]he trial court's findings of fact are presumed to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744 (Tenn. 2002). When credibility and weight to be given testimony are involved, considerable deference must be afforded to the trial court when the trial judge had the opportunity to

-9-

observe the witnesses' demeanor and to hear in-court testimony. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997) (*quoting Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996)). Because trial courts are able to observe the witnesses, assess their demeanor, and evaluate other indicators of credibility, an assessment of credibility will not be overturned on appeal absent clear and convincing evidence to the contrary. *Wells v. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Questions of law are subject to de novo review with no presumption of correctness. *Graham v. Caples*, 325 S.W.3d 578, 581 (Tenn. 2010); *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008) (*citing Perrin v. Gaylord Entm't Co.*, 120 S.W.3d 823, 826 (Tenn. 2003)).

340 S.W.3d at 359-60.

## IV.

### A.

The Student argues that the trial judge was obligated to disclose his wife's previous employment with KCBE and that the court's failure to make that disclosure justifies recusal and a new trial. The thrust of the Student's argument is that even though Mrs. Rosenbalm had retired by the time of trial, the fact that she worked at KCBE's central office during the time frame of the events at issue, and the fact that her employment was not disclosed, taken together, give rise to a reasonable basis to question the judge's impartiality. The Student relies on the Commentary to Canon 3E of the Code of Judicial Conduct as applied in *Olerud v. Morgan*, No. M2010-01248-COA-R3-CV, 2011 WL 607113 at *4 n.5 (Tenn. Ct. App. M.S., filed Feb. 18, 2011). That part of the Commentary quoted in a footnote in *Olerud* states:

> A judge should disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification.

*Id*. Thus, based on the facts of *Olerud* which showed that the trial judge was an active member of the board of directors of the defendant hospital, and a long-time supporter of the hospital, we stated that "the court should have disclosed its affiliation with the board of the hospital and allowed the parties to determine what, if any, relevance to attach to the court's

affiliation." *Id*. at \*4; *see id*. at \*3 (discussing the judge's direct affiliation with the hospital). Moreover, in ***Olerud***, the judge had made several interlocutory rulings which, in the context of his affiliation with the hospital, furnished a basis for questioning the court's impartiality. *Id*. at 4 ("with these particular rulings in mind").

The present case bears little, if any, resemblance to ***Olerud***. Unlike ***Olerud***, the trial judge's interlocutory rulings in the present case were fairly neutral; the Student won as many battles as she lost, including a verdict against the Instructor. More importantly, the disclosure that the Student suggests should have been made would not have been a basis for recusal. The past employment of the judge's wife as one of more than 100 secretaries in a location other than West High School does not furnish "a reasonable basis for questioning the judge's impartiality." *Id*. at 2 (*quoting **Alley v. State***, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). It follows that Judge Rosenbalm did not abuse his discretion in failing to make the disclosure, failing to recuse himself and failing to grant a new trial.

B.

We consider the last issue next. The Student argues that because the trial court expressed approval of the jury's verdict finding negligent infliction of emotional distress, it should have found that the Instructor's actions were not outside the course and scope of his employment. We fail to see the force of any logic in this argument. Proof of negligence is not interchangeable with proof of scope of employment; the statute removes immunity from a governmental entity only if the injury is (1) caused "by a negligent act or omission" of any employee and (2) the employee is acting "within the scope of his employment." Tenn. Code Ann. § 29-20-205. This language clearly does not contemplate situations where an employee, such as the Instructor in this case, is acting negligently but outside the scope of his employment.

The Student also argues that the factors found in the Second Restatement of Agency § 228 (1957), compel a finding that the Instructor was acting in the scope of his employment. These factors were discussed and adopted in ***Hughes***, 340 S.W.3d at 363-64, 366.

> The Restatement (Second) provides the following test for determining whether an act was within the scope of employment:
>
> (1) Conduct of the servant is within the scope of employment if, but only if:
>
> (a) it is of the kind he is employed to perform;

-11-

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master; and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of the servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master.

However, in the *Hughes* opinion, the Court adopted the following additional factors from section 229 of the Restatement:

(2) In determining whether or not the conduct although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result; and

(j) whether or not the act is seriously criminal.

*Hughes*, 340 S.W.3d at 364.

An exhaustive discussion of the above factors is not necessary. Suffice it to say that the Instructor's negligence did not occur while he was doing a task for which "he [had been] employed." Furthermore, his conduct was not "actuated, [even] in part, by a purpose to serve [KCBE]." It was not similar to what he had been hired to do. Certainly, KCBE had no reason to "expect such an act [to] be done" by the Instructor. When the record is considered as a whole in light of all the factors adopted in *Hughes*, and with due deference to the trial court's role in determining credibility and weight of the proof, the evidence does not preponderate against the trial court's finding that the Instructor was not acting within the scope of his employment when he committed the offensive acts against the Student.

C.

The final issue we consider is whether the evidence preponderates against the trial court's finding that no other employee of KCBE was negligent in failing to prevent the Instructor from preying upon the Student. The court found that there was no negligence because (1) KCBE's failure to train the Instructor in its policies was not the cause of the injury to the Student because the Instructor knew better despite his lack of training and (2) KCBE was not on either constructive or actual notice of the Instructor's propensities, partly because he had so cunningly covered his tracks.

-13-

The Student understandably only focuses her argument on the facts in her favor, including her youth, the school's admitted status in *loco parentis* to the Student, and KCBE's past experiences with teachers engaging in inappropriate relationships with students. She argues that in light of these facts, the failure to catch the Instructor at his game, along with the failure to put the Instructor through orientation, policy training, and periodic formal evaluations is unforgivable and should result in a finding of liability.

The Student's arguments miss the mark in that they fail to show that the evidence preponderates against the trial court's finding that there was no negligence other than that of the Instructor and even if there was failure of a duty by KCBE, that failure was not the cause of the injuries to the Student. The Instructor admitted that he knew better than to do what he did; he did not need to be told. Moreover, he successfully covered up his actions to the point that KCBE was not on notice of his abuse of his students. Apparently the Student would have us hold that since the Instructor's actions were so egregious and continued over such a long period of time, someone in charge must have known or at least should have known. The problem with this argument is that the trial court heard all the evidence and saw all the witnesses and was not convinced. *See Hughes*, 340 S.W.3d at 359-60. The trial court even commended counsel for their strenuous, but unsuccessful, efforts toward showing some type of notice to KCBE. The court specifically noted that

> after very careful consideration of all the evidence in this case, much of which is . . . highly disputed, but after considering the witnesses that have testified and the various accounts they have presented to the Court and making the appropriate determinations about their credibilities, the Court is constrained to conclude in the final analysis that [the Student] has not established by a preponderance of the evidence that any other employee of [KCBE] was negligent such – or that the negligence of such employee proximately caused any injury or loss or damage for which the [Student] has brought this lawsuit.

Our review of the record leaves us with the conviction that the evidence does not preponderate against the trial court's findings.

V.

The judgment of the trial court is affirmed. Cost on appeal are taxed to the appellant, Jane Doe. This matter is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and for collection of costs imposed by the trial court.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE