IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 4, 2016 Session

## ANITA V. WADHWANI v. PETER L. WHITE

**Appeal from the Fourth Circuit Court for Davidson County**
**No. 03D-2338     Philip E. Smith, Judge**

_____

**No. M2015-01447-COA-R3-CV-Filed August 31, 2016**

_____

In this post-divorce matter, the parties have been litigating for several years regarding issues of co-parenting time, child support, and contempt. In 2013, the trial court reduced the father's child support obligation based upon its finding that a significant variance existed between the prior child support amount and the new amount calculated utilizing the father's income. The trial court ordered that such modification would begin as of May 2012, when the State of Tennessee filed a petition seeking modification on the father's behalf. The father attempted to file an appeal of this matter in 2013, but the appeal was dismissed due to lack of a final order. Following remand, the trial court reviewed and adjusted the child support modification based upon demonstration of the father's income from all sources, including an inheritance he received from a relative. A final order was entered July 27, 2015. The father has appealed the trial court's judgment. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Fourth Circuit Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Peter L. White, Kingston Springs, Tennessee, Pro Se.

Anita V. Wadhwani, Nashville, Tennessee, Pro Se.

Herbert H. Slatery, III, Attorney General and Reporter, and Rachel E. Buckley, Assistant Attorney General, for the appellee, State of Tennessee *ex rel.* Anita V. Wadhwani.

**OPINION**

**I. Factual and Procedural Background**

On October 1, 2003, the plaintiff, Anita V. Wadhwani ("Mother"), filed a divorce action against the defendant, Peter L. White ("Father"), in the Davidson County Fourth Circuit Court ("trial court"). The parties had two minor sons, one of whom, K.W., was three years of age and the other, C.W., roughly seven months of age at the time of the complaint's filing. Mother alleged that Father had been violent and abusive to her and that he had threatened to take the children to Massachusetts, where his family lived, without Mother's permission. Mother sought and obtained an order of protection against Father in November 2003.

Mother subsequently sought to extend the order of protection in October of 2004, asserting that Father had violated the order of protection numerous times and had recently slapped her in the face while picking up one of the children. *See* Tenn. Code Ann. § 36-3-605(b) (providing for a one-year extension of an order of protection upon a proper showing of cause). On March 10, 2005, the parties entered into an agreed order of protection, which allowed Father to be around Mother only for the purpose of activities involving the children or in connection with the sale of the marital residence. On the same date, the trial court entered the parties' agreed divorce decree, which provided in pertinent part:

> Husband shall be awarded the marital residence. Wife shall be responsible for all debt secured by it and for all utilities and regular operating expenses for so long as she lives there, holding Husband harmless. Wife shall execute a Quitclaim Deed accordingly. Husband shall list the home for sale and shall be responsible for its sale. Wife shall maintain the home in showable condition and shall make it available for showing. Wife shall have reasonable notice as to when she must vacate the home. Husband is to receive all proceeds from the sale of the house. Wife will remain in the house for at least six months or until the house is sold, whichever is earlier.*
>
> > *From the sales proceeds of the house, Husband is to deposit $5,000 in an account for [K.W.'s] post-high school educational expenses, with Wife as trustee, and $15,000 into an account for [C.W.'s] post high school educational expenses, with Husband as trustee.

The parties' divorce decree also incorporated a "final" parenting plan, which provided that the children would spend 230 days per year with Mother and 135 days annually with Father. The parenting plan further provided that Father would pay Mother $950.00 per month in child support, including $414.00 for "Father's agreed upon share of the children's school/da," presumably referring to preschool and day care expenses. The parenting plan also stated that "[t]he parties affirmatively acknowledge that Court approval must be obtained before child support can be reduced or modified, unless such payments are automatically reduced or terminated under the terms of the Parenting Plan." The parenting plan did not contain any provision for an automatic reduction or termination in child support, although it did provide: "Any change from public to private school or vice-versa shall constitute a significant variance for purposes of child support review."

In August 2005, Mother filed a motion seeking to extend the agreed order of protection for another year. Mother claimed that Father had appeared at her home unannounced and uninvited on more than one occasion in violation of the order of protection. The trial court thereafter entered an order extending the order of protection for an additional year and modifying it such that Father was not allowed to visit Mother's home for any reason. Father appealed this order, which resulted in an affirmance by this Court. *See Wadhwani v. White*, No. M2005-02655-COA-R3-CV, 2007 WL 27329, at *1 (Tenn. Ct. App. Jan. 3, 2007).

In May 2007, Mother filed an emergency petition seeking to modify Father's co-parenting schedule. Mother alleged that Father had been angry and violent with the parties' oldest son. Mother also raised an issue of contempt. Mother filed an amended petition in April 2008, asserting that Father was in arrears on his child support obligation and had failed to sell the marital residence as ordered in the parties' divorce decree. In February 2009, Father filed a counter-petition seeking modification of the parenting plan and of his child support obligation. In January 2012, Mother renewed her petition for contempt and for enforcement of Father's child support obligation. The record reflects that these petitions were apparently never acted upon by the trial court nor pursued by the parties.

On May 21, 2012, the State of Tennessee filed a petition on Father's behalf seeking a reduction in his child support obligation. The petition stated that Father had been participating in or had applied for a state-sponsored public assistance program, such that the State was "a party for the limited purpose of fulfilling its obligations as set forth under Title IV-D and the laws of Tennessee." The State asserted that Father had been ordered in 2005 to pay child support in the amount of $950.00 per month but that a significant variance existed at the time of the petition between the amount he had been ordered to pay and the amount calculated pursuant to the Child Support Guidelines.

3

Father filed an affidavit of indigency, and the trial court appointed counsel to represent him. The parties thereafter filed competing contempt petitions. By order dated March 27, 2013, following a hearing on November 5, 2012, the trial court determined that Father owed $950.00 per month in child support pursuant to the parties' divorce decree and parenting plan. The court noted, however, that $414.00 of that obligation was contractual because it represented Father's share of the children's private school and day care expense. The court thus concluded that the $414.00 portion was not enforceable by a contempt petition but that the remaining $536.00 portion was enforceable by a contempt petition.

Following a subsequent hearing held on March 25, 2013, the trial court, by order dated April 8, 2013, directed Father to place the marital residence on the market for sale no later than April 24, 2013. The court further directed that a lien in the amount of $20,000.00 be placed upon any inheritance to be received by Father from his uncle's estate to secure Father's obligation regarding the children's college funds, as detailed in the parties' earlier divorce decree. The court entered a supplemental order on May 16, 2013, finding that the child support provision in the parties' divorce decree was clear, concise, and unambiguous, but that Father failed to pay as ordered even though he had the ability to do so. The court determined Father's total child support arrearage to be $50,178.00 at the time of the hearing. The court set a review hearing regarding resolution of the contempt petition for July 15, 2013.

Following the subsequent contempt hearing, the trial court entered an order on August 30, 2013, finding that the marital residence had been sold.[1] Pursuant to the lien placed on title to the home by the State, $50,527.31 was paid toward Father's child support obligation. The court thus determined that Father had an arrearage as of the August 2013 order in the amount of $1,128.69.

Meanwhile, the trial court conducted a child support modification hearing on July 22, 2013, subsequently entering an order from that hearing on September 23, 2013. In that order, the court made factual findings, which we have summarized for brevity:

1. Child support would only be modified to the date of filing of the State's petition for modification, or May 12, 2012.[2] The court determined that while Father had filed a prior petition in February 2009 seeking modification of his child support obligation, Father

---

[1] In the meantime, Mother sought and was granted another order of protection against Father on July 8, 2013.

[2] The trial court erroneously determined that the date of filing of the State's petition seeking to modify child support was May 12, 2012. In actuality, the petition was file-stamped on May 21, 2012.

had admitted that he "did not move his petition[] forward to resolution" for various reasons.

2.    Father was "somewhat" underemployed because he had a Master's Degree in Journalism but was working part-time for a moving company earning $15.00 per hour. The court thus imputed income to Father of $2,600.00 per month.

3.    Mother was employed by Gannett Company earning a gross income of $4,742.83 per month.

4.    Mother's cost of health insurance premiums for the children was $158.00 per month.

5.    Mother incurred work-related child care expenses of $135.00 per month.

6.    The allocation of parenting plan days would remain the same, with Mother having the children for 230 days per year and Father having the children 135 days annually.

7.    A significant variance existed between the prior child support amount and the new amount of $152.00 per month.

8.    The prior deviation for tuition would not be included because Mother was no longer incurring this cost.

9.    Father was a beneficiary of his uncle's estate, which would be settled in the near future.

10.   Accumulated interest on the child support arrearage would be addressed upon further hearing.

On December 9, 2013, the trial court entered an order, again determining that Father's child support obligation could not be modified prior to May 12, 2012, the date of filing of the State's petition to modify.[3] Father's current child support obligation was set for further review on December 16, 2013. Father filed a notice of appeal later that same day, seeking to appeal the order of December 9, 2013. On December 16, 2013, Father filed a motion for recusal, alleging that the trial court judge had shown favoritism toward Mother and had acted unfairly toward Father.

---

[3] See footnote 2.

5

The following day, Mother's counsel filed an emergency petition for a restraining order, alleging that Father had made a death threat against counsel. Due to the pending motion for recusal, Mother's counsel requested that her petition be heard by another judge. The restraining order was entered on December 19, 2013, by a judge sitting by interchange.

On January 2, 2014, the trial court entered an order from the December 16, 2013 hearing. The court noted that Father had presented his motion for recusal during the course of the hearing after the court had directed Father to deposit any additional money he received from his uncle's estate into the registry of the Davidson County Circuit Court Clerk's office pending further court determination regarding interest due on Father's previous child support arrearage. The court thus determined that it could not rule on any further issues until the recusal issue was addressed.

On January 15, 2014, the trial court entered an order denying Father's motion for recusal. The court found that no basis for recusal existed pursuant to Tennessee Supreme Court Rule 10 because the judge held no bias or prejudice toward either party and had no doubt of his ability to proceed impartially in this matter. On August 13, 2014, Mother sought and was granted another order of protection against Father.

On November 24, 2014, this Court ordered the parties to show cause why Father's December 2013 appeal should not be dismissed due to the lack of a final order. On December 2, 2014, Father gave notice to the trial court that he wished to dismiss his counter-petition, in which he had sought modification of the parties' parenting plan and his child support obligation, in order to "expedite the matter for the Court of Appeals." Thereafter, on December 19, 2014, this Court dismissed Father's appeal due to lack of a final order. Father subsequently filed a motion seeking a final order from the trial court, stating that "[a]ll issues in this case have been resolved or are no longer relevant." During a subsequent hearing held on April 9, 2015, however, Father stated (as memorialized in the court's subsequent order) that he did not believe the only outstanding issue to be a determination of the proper current amount of child support. Father then provided the court with a "list of pending petitions," stating that Mother's 2007 petition for contempt and Father's 2009 petition regarding modification of the parenting plan and child support had never been adjudicated.

On June 1, 2015, the trial court entered an order stating, *inter alia*:

[T]he Court found that any Petitions filed by either party prior to May 12, 2012 should be dismissed for failure to prosecute them. The Court further found that the Father has acknowledged that he did not move forward on

the said Petitions for various reasons. The Court also found that it has an interest in controlling its docket and as part of that important interest, it is thus dismissing any Petitions filed prior to May 12, 2012, with prejudice.[4] The Court further found that the only remaining issue before the Court is the accuracy of current child support due from the Father to the Mother . . . .

The trial court conducted a hearing on June 1, 2015, regarding Father's child support obligation. The record contains a statement of the evidence from that hearing, which was approved by the trial court. In the statement of the evidence, the trial court noted that Father was the "absolute worst witness the Court has ever had before it." Father was described as histrionic and as failing to answer questions directly and only answering questions "in a way to help himself." The court found that Father was unworthy of belief and accorded no weight to his testimony. The court found that Mother, by contrast, "appeared truthful, answered questions in a straight-forward manner, and most importantly, answered the question that was asked." The court accorded great weight to Mother's testimony.

The trial court entered an order on July 17, 2015, finding Father to be underemployed and imputing income to him of at least $2,600.00 per month. The court also determined that Father's $107,000.00 inheritance from his uncle's estate should be considered gross income for child support purposes and averaged over a ten-year period. The court thus determined that Father's total gross income should be established at $3,434.10 per month. Based on the child support worksheet, the court concluded that Father should pay child support to Mother in the amount of $318.00 per month. Although this order disposed of the remaining issues in the case, the court also certified this order as final pursuant to Tennessee Rule of Civil Procedure 54.02.[5]

---

[4] See footnote 2.

[5] As our Supreme Court has explained:

> Rule 54.02 requires as an absolute prerequisite to an appeal the certification by the trial judge, first, that the court has directed the entry of a final judgment as to one or more but fewer than all of the claims, and, second, [made] an express determination that there is no just reason for delay. Such certification by the trial judge creates a final judgment appealable as of right under Rule 3 T.R.A.P.

*Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983). In this case, however, the trial court was not directing the entry of a final judgment that adjudicated fewer than all of the claims because Father's current child support obligation was the only remaining claim left to be adjudicated. Ergo, the trial court's order was final because no outstanding claims or issues remained.

Father filed a motion to alter or amend, which was denied by the trial court by order entered July 27, 2015. Father timely appealed.

## II.  Issues Presented

Father's brief presents numerous issues for our review, written in a narrative style. Upon careful review, we have therefore restated Father's issues as follows:

1.  Whether the trial court erred by ordering Father to sell the marital residence pursuant to the terms of the parties' divorce decree.

2.  Whether the trial court erred by enforcing the parties' agreed parenting plan with regard to preschool and day care expenses.

3.  Whether the trial court erred by holding Father in civil contempt for failure to pay child support or for picking the children up after school.

4.  Whether the trial court erred by dismissing Father's 2009 petition to modify the parties' parenting plan and Father's child support obligation.

5.  Whether the trial court erred by denying Father's request to submit evidence and/or witnesses in support of his claims.

6.  Whether the trial court erred in determining Father to be willfully underemployed.

7.  Whether the trial court erred in its calculation of current child support.

8.  Whether the trial court erred in granting Mother an order of protection on September 4, 2014.

9.  Whether the trial court erred in denying Father's motion seeking the trial judge's recusal.

Mother raises the following additional issue:

10. Whether this Court should dismiss Father's appeal for failure to comply with Tennessee Rule of Appellate Procedure 27 and Rule 6 of the Rules of the Court of Appeals of Tennessee.

## III. Standard of Review

Determinations regarding child support are reviewed under an abuse of discretion standard. *See Mayfield v. Mayfield*, 395 S.W.3d 108, 114-15 (Tenn. 2012); *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). "This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). To the extent that we need also review the factual findings of the trial court, we presume those findings to be correct and will not overturn them unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Morrison v. Allen*, 338 S.W.3d 417, 425-26 (Tenn. 2011). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006).

Additionally, as this Court has explained with regard to self-represented litigants:

Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers.

Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries. They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn.

9

R. Civ. P. 7, 8.05, and 8.06 provide to other litigants. Even though the courts cannot create claims or defenses for pro se litigants where none exist, they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers.

*Young v. Barrow,* 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003) (internal citations omitted).

## IV. Deficiencies in Father's Brief

As a threshold procedural matter, Mother asserts that Father's appellate brief should be disregarded and his appeal dismissed because it fails to meet the requirements for an appellant's brief provided in Tennessee Rule of Appellate Procedure 27, which states in pertinent part:

(a) Brief of the Appellant. The brief of the appellant shall contain under appropriate headings and in the order here indicated:

* * *

(6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

(7) An argument, which may be preceded by a summary of argument, setting forth:

(A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

(B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues) . . . .

(Emphasis added.)

10

Similarly, Rule 6 of the Rules of the Court of Appeals of Tennessee provides in pertinent part:

(a) Written argument in regard to each issue on appeal shall contain:

(1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.

(2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

(3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

(4) A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

(b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

(Emphasis added.)

Father's brief contains numerous deficiencies with regard to the above-listed requirements. The statement of facts included in Father's brief contains no references to the record. *See* Tenn. R. App. P. 27. Likewise, the argument section also exhibits no record citations and few citations to authority. *Id.*; *see also* Tenn. Ct. App. R. 6. With regard to several of the issues raised, Father has failed to demonstrate that the errors alleged were brought to the attention of the trial court by citing the part of the record where the challenge of the alleged error would be recorded. *See* Tenn. Ct. App. R. 6. As this Court has previously explained with regard to deficiencies in an appellate brief:

Our Courts have "routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument

11

section of the brief as described by Rule 27(a)(7) constitutes a waiver of the issue[s] [raised]." *Bean v. Bean,* 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000). In *Bean,* we went on to hold that "an issue is waived where it is simply raised without any argument regarding its merits." *Id.* at 56; *see also Newcomb v. Kohler Co.,* 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (holding that the failure of a party to cite to any authority or to construct an argument regarding his or her position on appeal constitutes waiver of that issue). As we stated in *Newcomb,* a "skeletal argument that is really nothing more than an assertion will not properly preserve a claim." *Newcomb,* 222 S.W.3d at 400. It is not the function of this Court to verify unsupported allegations in a party's brief or to research and construct the party's argument. *Bean,* 40 S.W.3d at 56.

Despite the fact that [the appellant's] brief is woefully inadequate, there are times when this Court, in the discretion afforded it under Tenn. R. App. P. 2, may waive the briefing requirements to adjudicate the issues on their merits. This is especially true in cases involving domestic relations where the interests of children are involved.

*Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009).

In the case at bar, although Father's brief fails to satisfy the requirements of Tennessee Rule of Appellate Procedure 27 and Rule 6 of the Rules of the Court of Appeals of Tennessee, we determine that, due to the length of time this domestic relations litigation involving the interests of children has been ongoing, this is an appropriate case in which to exercise our discretion to waive the briefing requirements in order to adjudicate certain issues on the merits. We therefore decline Mother's request that we disregard Father's brief in its entirety.

V. Forced Sale of the Marital Residence

Father asserts that the trial court erred by ordering him to sell the marital residence in accordance with the terms of the parties' divorce decree. The parties' final decree, dated March 10, 2005, provided that Father was to place the marital residence on the market. It further provided that Father would receive all proceeds from the sale of the home but that he was to deposit $20,000.00 from those proceeds into college accounts for the children.

On February 4, 2013, Mother filed a petition seeking, *inter alia*, an order from the court commanding Father to sell the marital residence and place the requisite funds in the children's college accounts because Father had never done so. On April 8, 2013, the

court entered an order directing Father to place the house on the market no later than April 24, 2013. The court also ordered Father to deposit $20,000.00 from the proceeds of the sale of the home into college accounts for the children, pursuant to the terms of the parties' divorce decree. A subsequent order of the court reflects that Father sold the marital residence prior to August 30, 2013.

Father does not dispute that he agreed in the parties' divorce decree that the marital residence would be sold. Father specifically argues that the trial court erred in ordering him to sell the marital residence because "it is the sole asset of the indigent appellant, [and] amounts to a termination of his parental rights because he will be, and did become, homeless and unable to exercise them." In the approved statement of the evidence filed in this matter, however, the trial court noted that Father purchased a home in December 2013 with a portion of an inheritance he received from his uncle. It is also clear from the record that Father has continued to exercise his co-parenting time with the children. Therefore, Father has shown no basis as to why the trial court erred in ordering him to sell the marital residence, which he agreed to do as part of the parties' divorce. We determine this issue to be without merit.

## VI. Prior Child Support Order and Contempt

Father argues that the trial court erred by determining Father to be in arrears on his child support obligation and subsequently ordering a lien placed on the sale proceeds from the marital residence to satisfy the arrearage. Father asserts that a portion of the prior child support obligation was for preschool tuition that was neither incurred nor paid by Mother. Father appears to be referring to orders of the trial court dated March 27, 2013, and May 16, 2013, wherein the trial court determined that the prior child support order of $950.00 per month was enforceable and could not be unilaterally modified by Father. The court noted that the $950.00 total amount was comprised of $536.00 determined by the child support guidelines plus a $414.00-per-month upward deviation, which represented Father's share of the children's preschool and day care expenses. The court further noted that the total amount was agreed to by Father and ordered by the court.

Father also argues that the trial court erred in enforcing this prior child support obligation because Mother did not present evidence proving that she incurred or paid the extra expense constituting the $414.00 monthly upward deviation. We note, however, that Father has not provided this Court with a statement of the evidence or a transcript of the relevant hearing in order for this Court to review the evidence presented regarding this ruling.

Tennessee Rule of Appellate Procedure 24 provides in pertinent part:

(b) Transcript of Stenographic or Other Substantially Verbatim Recording of Evidence or Proceedings.  Except as provided in subdivision (c), if a stenographic report or other contemporaneously recorded, substantially verbatim recital of the evidence or proceedings is available, the appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal.  Unless the entire transcript is to be included, the appellant shall, within 15 days after filing the notice of appeal, file with the clerk of the trial court and serve on the appellee a description of the parts of the transcript the appellant intends to include in the record, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal.  If the appellee deems a transcript of other parts of the proceedings to be necessary, the appellee shall, within 15 days after service of the description and declaration, file with the clerk of the trial court and serve on the appellant a designation of additional parts to be included.  The appellant shall either have the additional parts prepared at the appellant's own expense or apply to the trial court for an order requiring the appellee to do so.  The transcript, certified by the appellant, the appellant's counsel, or the reporter as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal.  Upon filing the transcript, the appellant shall simultaneously serve notice of the filing on the appellee.  Proof of service shall be filed with the clerk of the trial court with the filing of the transcript.  If the appellee has objections to the transcript as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of notice of the filing of the transcript.  Any differences regarding the transcript shall be settled as set forth in subdivision (e) of this rule.

* * *

(c) Statement of the Evidence When No Report, Recital, or Transcript Is Available.  If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, or if the trial court determines, in its discretion, that the cost to obtain the stenographic report in a civil case is beyond the financial means of the appellant or that the cost is more expensive than the matters at issue on appeal justify, and a statement of the evidence or proceedings is a reasonable alternative to a stenographic report, the appellant shall prepare a statement of the evidence

14

or proceedings from the best available means, including the appellant's recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. The statement, certified by the appellant or the appellant's counsel as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal. Upon filing the statement, the appellant shall simultaneously serve notice of the filing on the appellee, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. Proof of service shall be filed with the clerk of the trial court with the filing of the statement. If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of the declaration and notice of the filing of the statement. Any differences regarding the statement shall be settled as set forth in subdivision (e) of this rule.

* * *

(e) Correction or Modification of the Record. If any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth. Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. Absent extraordinary circumstances, the determination of the trial court is conclusive. If necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted.

(f) Approval of the Record by Trial Judge or Chancellor. The trial judge shall approve the transcript or statement of the evidence and shall authenticate the exhibits as soon as practicable after the filing thereof or after the expiration of the 15-day period for objections by appellee, as the case may be, but in all events within 30 days after the expiration of said period for filing objections. Otherwise the transcript or statement of the evidence and the exhibits shall be deemed to have been approved and shall be so considered by the appellate court, except in cases where such approval did not occur by reason of the death or inability to act of the trial judge. In the event of such death or inability to act, a successor or replacement judge of the court in which the case was tried shall perform the duties of the trial judge, including approval of the record or the granting of any other appropriate relief, or the ordering of a new trial. Authentication

of a deposition authenticates all exhibits to the deposition. The trial court clerk shall send the trial judge transcripts of evidence and statements of evidence.

In the case at bar, no transcript has been filed that is properly certified as required by Tennessee Rule of Appellate Procedure 24. Although Father filed with the trial court copies of video recordings from various hearings, along with transcripts of those recordings that were apparently prepared by Father, those transcripts were never certified by Father or by the trial judge. The video recordings and submitted transcripts cannot be considered by this Court because they do not meet the requirements of Tennessee Rule of Appellate Procedure 24.[6] Furthermore, the only statement of evidence that was approved by the trial judge is dated November 23, 2015, and relates exclusively to the June 1, 2015 child support hearing, wherein the trial court set Father's current obligation.

Inasmuch as this Court has no proper transcript or statement of the evidence from the prior child support hearing, we must presume that there was sufficient evidence to support the trial court's factual findings. *See Word v. Word*, 937 S.W.2d 931, 932 (Tenn. Ct. App. 1996) ("In the absence of a transcript, we must assume that 'the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings.'") (quoting *Sherrod v. Wix,* 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992)).

Father also argues that the trial court erred by finding him to be in contempt for his failure to pay child support. In its 2013 orders, the court determined that Father had willfully refused to pay the child support ordered, despite his ability to do so. Again, the trial court's factual determination regarding Father's ability to pay cannot be reviewed in the absence of a proper transcript or statement of the evidence. Therefore, the court's ruling must stand. *See Word*, 937 S.W.2d at 932.

Father further raises an issue regarding whether the trial court properly held him in contempt for picking the children up after school. Although the record does contain a

---

[6] Father previously asked this Court to allow him to submit the video recordings in lieu of written transcripts, and that motion was denied by this Court on August 12, 2015. We further note that the trial court, the Fourth Circuit Court of the 20th Judicial District, has not been authorized to use audio-visual recordings as the official record of court proceedings pursuant to Tennessee Supreme Court Rule 26. *See* Tenn. Sup. Ct. R. 26 § 1.01 ("This rule applies to any court of record authorized by the Supreme Court of Tennessee to use electronic recording equipment to record court proceedings."); *see also* Tenn. 20th J. Dist. R. § 8(a) ("The Sixth Circuit Court has been authorized by the Supreme Court to use audio-visual recordings as the official record of court proceedings pursuant to Supreme Court Rule 26. Unless otherwise ordered by the affected court, no other court will record or utilize such audio-visual recordings as the official record on appeal . . . .").

contempt petition regarding such conduct by Father that was filed by Mother on August 21, 2015, this date was more than two weeks following the filing of the notice of appeal. As such, the petition was clearly not addressed by the trial court's final order of July 27, 2015, and cannot be addressed as an issue on appeal. *See Dorrier v. Dark,* 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts . . . .").

## VII. Dismissal of Father's 2009 Counter-Petition

Father argues that the trial court erred in dismissing his 2009 counter-petition, in which he sought a modification of the parties' parenting plan and his child support obligation. Mother had previously filed an emergency petition on May 3, 2007, seeking an order modifying Father's co-parenting time with the children. Mother thereafter filed an amended petition on April 25, 2008, further addressing child support arrearages. Father filed a counter-petition on February 18, 2009, seeking a modification of the parenting plan and his child support obligation. There appears nothing in the record demonstrating that these petitions were ever set for hearing.

The State filed a subsequent petition seeking modification of Father's child support obligation on May 21, 2012. Following the filing of other petitions by both parties, the trial court conducted a hearing on November 5, 2012, regarding child support. The court found the prior child support provision to be enforceable and subsequently established the amount of Father's arrearage by Order entered May 16, 2013. During a subsequent hearing conducted on July 22, 2013, the trial court determined that child support could not be set at that time because Father testified that he had been caring for his uncle until December 1, 2011, and was awaiting an inheritance from his uncle's estate in an amount yet to be determined.

In the September 23, 2013 order (from the July 22, 2013 hearing), the trial court determined that Father had "filed his own petitions for modification either pro se or through private counsel dating back a few years. While these prior petitions were never dismissed, by Father's own admissions, there were various reasons he did not move his petitions forward to resolution." The court thus determined that Father's child support obligation could not be modified prior to the date that the State filed its petition seeking modification of child support in May 2012.

Following the dismissal of Father's 2013 appeal, he again raised an issue regarding his 2009 counter-petition. The trial court entered a subsequent order dated June 1, 2015, wherein the court stated:

[A]ny Petitions filed by either party prior to May 12, 2012 should be dismissed for failure to prosecute them. The Court further found that the Father has acknowledged that he did not move forward on the said Petitions for various reasons. The Court also found that it has an interest in controlling its docket and as part of that important interest, it is thus dismissing any Petitions filed prior to May 12, 2012, with prejudice.[7]

Father complains that the trial court erred by dismissing his 2009 counter-petition, insisting that the trial court should have modified his child support obligation to the date of filing of the 2009 counter-petition rather than the 2012 filing date of the State's petition. We disagree. This Court has previously explained:

Trial courts possess inherent, common-law authority to control their dockets and the proceedings in their courts. Their authority is quite broad and includes the express authority to dismiss cases for failure to prosecute or to comply with the Tennessee Rules of Civil Procedure or the orders of the court. Tenn. R. Civ. P. 37.02(C); Tenn. R. Civ. P. 41.02(1); *Kotil v. Hydra-Sports, Inc.,* No. 01A01-9305-CV-00200, 1994 WL 535542, at *3 (Tenn. Ct. App. Oct. 5, 1994) (No Tenn. R. App. P. 11 application filed). Because decisions to dismiss for failure to prosecute are discretionary, *White v. College Motors,* 212 Tenn. 384, 386, 370 S.W.2d 476, 477 (1963), reviewing courts will second-guess a trial court only when it has acted unreasonably, arbitrarily, or unconscionably. *Friedman v. Belisomo,* No. 02A01-9304-CH-00094, 1993 WL 498504, at *3 (Tenn. Ct. App. Dec. 1, 1993) (No Tenn. R. App. 11 application filed). Trial courts may, on their own motion, dismiss cases for lack of prosecution, but this authority should be exercised sparingly and with great care. *Harris v. Baptist Mem'l Hosp.,* 574 S.W.2d 730, 731 (Tenn. 1978).

*Hodges v. Attorney Gen.*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000).

In this matter, Mother's petition was originally filed in May 2007, and Father's counter-petition was filed in February 2009. Neither party pursued a hearing regarding these respective petitions. Upon the November 2012 hearing on the State's May 2012 petition, the trial court found in its subsequent order that Father "acknowledged that he did not move forward on the said Petitions for various reasons." The court also determined that it had an interest in controlling its docket and thus would not, in 2012, consider the dormant 2007, 2008, and 2009 petitions. We conclude that the trial court did not abuse its discretion in this determination and did not act unreasonably, arbitrarily, or unconscionably. Therefore, the trial court did not err by refusing to modify Father's child

_____

[7] See footnote 2.

support obligation prior to the date of filing of the State's petition to modify in May 2012.

## VIII. Exclusion of Evidence and Witnesses

Father asserts that the trial court erred by "refusing to hear witnesses or let evidence be entered into the record in [Father's] defense." As previously explained, the only proper record provided to this Court regarding what transpired at the trial court level is the statement of the evidence approved by the trial court on November 23, 2015. This statement, however, fails to detail any evidence or witnesses proffered by Father and rejected by the court. We reiterate:

> [I]n order for this Court to properly review the trial court's actions, the record must be in a proper posture to provide us a meaningful review. This Court's review is limited to the appellate record and it is incumbent upon the appellant to provide a record that is adequate. *Jennings v. Sewell-Allen Piggly Wiggly,* 173 S.W.3d 710 (Tenn. 2005).

*Chiozza*, 315 S.W.3d at 489. Inasmuch as Father has failed to provide this Court with an adequate record to review this issue, no relief can be granted.

## IX. Willful Underemployment

Father argues that the trial court erred in finding him to be willfully underemployed and imputing income to him for purposes of setting his current child support obligation. This Court has elucidated the proper standard of review to be applied to such a determination as follows:

> A trial court's determination regarding willful and voluntary underemployment is entitled to a presumption of correctness, and "we accord substantial deference to the trial court's decision, especially when it is premised on the trial court's singular ability to ascertain the credibility of the witnesses." *Reed* [*v. Steadham*, No. E2009-00018-COA-R3-CV,] 2009 WL 3295123 at *2 [(Tenn. Ct. App. Oct. 14, 2009)].

*Miller v. Welch*, 340 S.W.3d 708, 712-13 (Tenn. Ct. App. 2010) (quoting *Pace v. Pace,* No. M2009-01037-COA-R3-CV, 2010 WL 1687740, at *8 (Tenn. Ct. App. Apr. 26, 2010) (other internal citations omitted)).

The Child Support Guidelines provide that income may be imputed to a parent when that parent has been determined to be voluntarily underemployed. *See* Tenn.

Comp. R. & Regs. 1240-02-04-.04. Regarding the determination of willful or voluntary underemployment, the Guidelines state:

The Guidelines do not presume that any parent is willfully and/or voluntarily under or unemployed. The purpose of the determination is to ascertain the reasons for the parent's occupational choices, and to assess the reasonableness of these choices in light of the parent's obligation to support his or her child(ren) and to determine whether such choices benefit the children.

(I) A determination of willful and/or voluntary underemployment or unemployment is not limited to choices motivated by an intent to avoid or reduce the payment of child support. The determination may be based on any intentional choice or act that adversely affects a parent's income. Criminal activity and/or incarceration shall not provide grounds for reduction of any child support obligation. Therefore, criminal activity and/or incarceration shall result in a finding of voluntary underemployment or unemployment under this section, and child support shall be awarded based upon this finding of voluntary underemployment or unemployment.

(II) Once a parent that has been found to be willfully and/or voluntarily under or unemployed, additional income can be allocated to that parent to increase the parent's gross income to an amount which reflects the parent's income potential or earning capacity, and the increased amount shall be used for child support calculation purposes. The additional income allocated to the parent shall be determined using the following criteria:

I. The parent's past and present employment; and

II. The parent's education and training.

(III) A determination of willful and voluntary unemployment or underemployment shall not be made when an individual enlists, is drafted, or is activated from a Reserve or National Guard unit, for full-time service in the Armed Forces of the United States.

*Id.* The Guidelines also list certain factors that are to be considered when determining whether a parent is voluntarily underemployed, as follows:

(I) The parent's past and present employment;

20

(II) The parent's education, training, and ability to work;

(III) The State of Tennessee recognizes the role of a stay-at-home parent as an important and valuable factor in a child's life. In considering whether there should be any imputation of income to a stay-at-home parent, the tribunal shall consider:

> I. Whether the parent acted in the role of full-time caretaker while the parents were living in the same household;

> II. The length of time the parent staying at home has remained out of the workforce for this purpose; and

> III. The age of the minor children.

(IV) A parent's extravagant lifestyle, including ownership of valuable assets and resources (such as an expensive home or automobile), that appears inappropriate or unreasonable for the income claimed by the parent;

(V) The parent's role as caretaker of a handicapped or seriously ill child of that parent, or any other handicapped or seriously ill relative for whom that parent has assumed the role of caretaker which eliminates or substantially reduces the parent's ability to work outside the home, and the need of that parent to continue in that role in the future;

(VI) Whether unemployment or underemployment for the purpose of pursuing additional training or education is reasonable in light of the parent's obligation to support his/her children and, to this end, whether the training or education will ultimately benefit the child in the case immediately under consideration by increasing the parent's level of support for that child in the future;

(VII) Any additional factors deemed relevant to the particular circumstances of the case.

*Id.*

Delving further into the subject of voluntary underemployment, this Court explained:

The Guidelines state that imputing additional gross income to a parent is appropriate if it is determined that he or she is "willfully and/or voluntarily underemployed or unemployed." Tenn. Comp. R. & Regs. § 1240-02-04-.04(3)(a)(2)(i)(I). "This is based on the premise that parents may not avoid their financial responsibility to their children by unreasonably failing to exercise their earning capacity." *Massey v. Casals* [315 S.W.3d 788, 795], No. W2008-01807-COA-R3-JV, 2009 WL 4017256, at \*6 (Tenn. Ct. App. Nov. 23, 2009). Therefore, a trial court may deny a petition for modification of child support if the significant variance is the result of willful or voluntary underemployment. *Wine* [*v. Wine*], 245 S.W.3d [389,] 394 [(Tenn. Ct. App. 2007)]. "The burden of proving that a significant variance is the result of willful or voluntary underemployment is on the party opposing the modification." *Id.* (citing *Demers v. Demers,* 149 S.W.3d 61, 69 (Tenn. Ct. App. 2003)). "The Guidelines do not presume that any parent is willfully and/or voluntarily under or unemployed." Tenn. Comp. R. & Regs. § 1240-02-04-.04(3)(a)(2)(ii). "The purpose of the determination is to ascertain the reasons for the parent's occupational choices, and to assess the reasonableness of these choices in light of the parent's obligation to support his or her child(ren) and to determine whether such choices benefit the children." *Id.*

"A determination of willful and/or voluntary underemployment or unemployment is not limited to choices motivated by an intent to avoid or reduce the payment of child support. The determination may be based on any intentional choice or act that adversely affects a parent's income." Tenn. Comp. R. & Regs. § 1240-02-04-.04(3)(a)(2)(ii)(I) (emphasis added). However, "[i]f a parent's reasons for working in a lower paying job are reasonable and in good faith, the court will not find him or her to be willfully and voluntarily underemployed." *Owensby v. Davis,* No. M2007-01262-COA-R3-JV, 2008 WL 3069777, at \*4, n.7 (Tenn. Ct. App. July 31, 2008). Although it is not required that parents intend to avoid their child support obligations by their actions, "willful or voluntary unemployment or underemployment must result from an intent on the part of the parent to reduce or terminate his or her income." *Wilson v. Wilson,* 43 S.W.3d 495, 497 (Tenn. Ct. App. 2000). The child support guidelines provide the trial court with several factors it may consider in making this determination. "'Determining whether a parent is willfully and voluntarily underemployed and what a parent's potential income would be are questions of fact that require careful consideration of all the attendant circumstances.'" *Reed v. Steadham,* No. E2009-00018-COA-R3-CV, 2009 WL 3295123, at \*2

(Tenn. Ct. App. Oct. 14, 2009) (quoting *Owensby,* 2008 WL 3069777, at *4). The trial court has considerable discretion in its determination of whether a parent is willfully or voluntarily underemployed. *Hommerding v. Hommerding,* No. M2008-00672-COA-R3-CV, 2009 WL 1684681, at *7 (Tenn. Ct. App. June 15, 2009) (citing *Eldridge v. Eldridge,* 137 S.W.3d 1, 21 (Tenn. Ct. App. 2002)); *see also Willis v. Willis,* 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001).

*Miller*, 340 S.W.3d at 712 (quoting *Pace,* 2010 WL 1687740, at *8 (footnote omitted)).

In the case at bar, the trial court set Father's current child support obligation following a hearing held on June 1, 2015. The statement of the evidence that was approved by the trial court provides a summary of Father's testimony at that hearing, concisely rephrased as follows:

- Father was, at the time of the hearing, working part-time teaching a film class. Father earned $160.00 per week from such part-time employment.

- Father received Social Security and Medicare benefits of $1,233.00 per month. Father testified that he was not considered disabled.

- Father holds a Bachelor of Arts degree from the University of California at Santa Barbara and a Master's Degree in journalism from Columbia University.

- Father presented his cover letter and resume. Father worked full time for Environmental News Trust from 2006 to 2010, earning $3,000.00 per "piece." Father attempted to complete one piece per week but never accomplished this goal. Father could no longer perform this type of work "due to his knee."

- Father worked for WKRN from 2004 to 2006, starting at a salary of $35,000.00 per year and concluding at a salary of $50,000.00 per year.

- Father worked for WSMV from 2002 to 2004, earning $25.00 per hour.

- Father also worked for Aljazeera News, "which was related with Mazlo Media Group – a broker of media services."

23

- Father's 2013 Roth IRA statement demonstrated that the total value of his IRA accounts was $7,898.00. Father also received monthly dividends from these accounts in the amount of $54.00 and capital gains in the amount of $190.00.

- Father purchased a home in December 2013 for $87,000.00 with no mortgage.

- Father did not produce any letters of rejection from employers to whom he sent his cover letter and resume, did not provide any pay stubs from his current employer, and provided no tax returns. Father testified that he did not file tax returns in 2013 and 2014.

With regard to Father's employment, the trial court made the following findings in its order dated July 17, 2015:

> The Court . . . found that the Father had testified that he is currently employed at the Art Institute of Tennessee, Nashville, where he is paid $40.00 per hour and is paid for 4 hours per week although he actually works 8 hours per week. The Father also testified that he does not have the ability to get more hours at work. The Father further testified that he receives Social Security retirement payments of $1,126.00 per month and Medicare payments of $107.00 per month, for a total of $1,233.00 monthly in governmental benefits in addition to his pay. The Father also testified that he has a BA in film and a Masters degree in journalism from Columbia University. The Father will be 68 in July and has children aged 12 and 15, who are the subject of this action. The Court notes that the Father has an impressive resume. The Father further testified that he has a small IRA and that he did not file any tax returns in 2013 and 2014.
>
> * * *
>
> The Court noted that it had previously found at a hearing in July 2013, by Order entered in September 2013, that the Father is "somewhat underemployed" based on his ability to work at much higher paying jobs.[8] The Court found that no proof had been presented at this hearing that the Father is unable to generate at least the $2,600.00 per month that the Court found him capable of earning in 2013. Based on that finding and all the

---

[8] The referenced order, dated September 23, 2013, was from a hearing held on July 22, 2013. The record contains no transcript or statement of the evidence from that hearing.

proof presented, the Court re-found that the Father is underemployed and capable of earning at least $2,600.00 per month.

We note that although the trial court did not explicitly make a finding of "voluntary" or "willful" underemployment, such a finding may be implicit based upon the court's ultimate decision to impute income. *See Anness v. Chapdelaine*, No. M2000-01792-COA-R3-CV, 2001 WL 1077959, at *3 (Tenn. Ct. App. Sept. 14, 2001). Father's issue, as presented, presupposes that the trial court found his underemployment to be willful. Based on the totality of the factual findings made by the trial court regarding Father's education, training, and previous earning capacity, coupled with the trial court's decision to impute income to Father, we determine that the trial court implicitly found Father's underemployment to be willful.

Based upon our thorough review of the evidence as detailed in the statement of the evidence, we conclude that the trial court did not abuse its discretion in determining Father to be underemployed. We agree with the trial court that Father's resume is indeed impressive. Father is well educated and has a history of employment at high-paying positions in the field of journalism. Father did not prove that he was physically disabled or otherwise unable to maintain full-time employment. The record contains no evidence that would demonstrate a reason for Father's inability to earn at least the amount imputed by the trial court.

We also note that Father reported receiving a Social Security retirement benefit of $1,126.00 per month in addition to his income from part-time employment of approximately $800.00 per month, for a total actual income of $1,926.00. We do not find the trial court's imputation of $2,600.00 per month to be an excessive amount, considering that this is only $674.00 more per month than Father actually received. According the proper deference to the trial court's determination, including the court's assessment of Father's credibility, we conclude that the trial court did not err in determining Father to be underemployed and imputing income to him of $2,600.00 per month.

X.  Current Child Support Amount

Father contends that the trial court erred in setting his current child support obligation. The statement of the evidence, summarized in part above, also contained the following testimony, summarized as follows:

- Father stated that he was current on child support payments as of the hearing date.

- Father paid child support twice per year rather than monthly.

- Father received 135 days of co-parenting time with the children annually, and Mother received 230 days. Mother provided health insurance for the children.

- Mother testified that she worked for The Tennessean and, in a limited capacity, for *USA Today*. Mother earned $65,000.00 per year. Mother provided all health and dental insurance for the children at a cost of $319.00 per month.

- Father received payments from his uncle's estate of $7,500.00 on December 19, 2012; $1,000.00 on December 29, 2012; and $100,097.00 on July 31, 2013.

- Father assented to the final accounting of his uncle's estate on August 26, 2013.

In its July 17, 2015 order, the trial court determined Father's child support obligation to be $318.00 per month, based upon the child support worksheet calculation. The court set Mother's income at $5,416.66 per month based upon her salary. Regarding Father's income, the court found that Father had recently received $107,000.00 from his uncle's estate, which the court determined should be included in Father's gross income and averaged over a ten-year period. The court thus added $834.10[9] per month to the imputed income amount of $2,600.00, to arrive at a total income for Father of $3,434.10 per month.

The Child Support Guidelines define gross income as including "all income from any source . . . whether earned or unearned." Tenn. Comp. R. & Regs. 1240-02-04-.04. Gross income specifically includes such "one-time" distributions as prizes, lottery winnings, and gifts that can be converted to cash. *Id.* Ergo, this Court has previously determined that "money received by inheritance can be considered as income under the guidelines." *Ford v. Ford*, No. 01A01-9611-CV-00536, 1998 WL 730201, at *4 (Tenn. Ct. App. Oct. 21, 1998). Courts should, however, "focus on 'income regularly received by the obligor.'" *Id.* (quoting *Whisenhunt v. Whisenhunt*, No. 02A01-9506-CV-00126, 1997 WL 305296, at *3 (Tenn. Ct. App. June 9, 1997)). The time period used for purposes of averaging "lies within the discretion of the trial court based upon the facts of

---

[9] We note that the trial court appears to have made a slight miscalculation when determining that the amount of $834.10 per month should be added to Father's income, inasmuch as $107,000.00 averaged over ten years would actually yield the amount of $891.67 per month. Because no party raised this error, we decline to recalculate Father's child support obligation.

26

the situation." *State ex rel. Moss v. Moss*, No. M2013-00393-COA-R3-CV, 2014 WL 1998738, at *3 (Tenn. Ct. App. Apr. 24, 2014).

In this matter, the trial court determined that Father's $107,000.00 inheritance received from his uncle should be considered as income for child support purposes. We determine that the trial court was correct in doing so. *See Ford*, 1998 WL 730201, at *4; *see, e.g., Moore v. Moore*, 254 S.W.3d 357 (Tenn. 2007) (holding that income from a "one-time" or "isolated" capital gain must be included as income to an obligor for child support purposes); *Eldridge v. Eldridge*, 137 S.W.3d 1, 22 (Tenn. Ct. App. 2002) (holding that $340,000 capital gain should be included when determining the obligor's income for child support purposes). The court also determined that Father's inheritance should be averaged over a period of ten years rather than counted as income for one year. We conclude that based on the circumstances presented, the trial court did not abuse its discretion in doing so. *See State ex rel. Moss*, 2014 WL 1998738, at *3 (holding that the time period selected for averaging "lies within the discretion of the trial court based upon the facts of the situation."). To have counted this entire sum as income for one year would have produced a falsely elevated child support award, which Father would likely be unable to maintain once the inherited funds were depleted. We determine the trial court's approach of dividing the total sum over a ten-year period to be fair and equitable.

Having determined that the income amounts utilized in the child support worksheet for both parties are fair and appropriate, we have no basis for concluding that the trial court abused its discretion in setting Father's current child support obligation. We determine this issue to be without merit.

## XI. Order of Protection

Father asserts that the trial court erred by granting Mother an order of protection on September 4, 2014, because "Mother failed to meet the legal requirements" to obtain an order of protection. Father argues that the court failed to consider the testimony of one of the parties' sons, allegedly contradicting Mother's account of the event precipitating the order of protection. Again, this Court has no properly certified transcript or statement of the evidence from the order of protection hearing. We must therefore presume that there was sufficient evidence to support the trial court's factual findings. *See Word*, 937 S.W.2d at 932.

## XII. Recusal

During oral argument, Father questioned whether the trial judge should have recused himself from this matter when Father filed a motion to recuse in December 2013. Father failed to raise this as issue in the statement of issues in his brief. As this Court has explained, "Courts have consistently held that issues must be included in the Statement of

Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4)" in order to be properly before this Court. *See In re Estate of Burke*, No. M2012-01735-COA-R3-CV, 2013 WL 2258045, at \*6 (Tenn. Ct. App. May 21, 2013) (quoting *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001)). Even if Father had properly presented this issue, however, we determine that recusal was unwarranted as Father has demonstrated no bias or prejudice on the part of the trial judge.

Father filed a motion to recuse in December 2013, asserting that the trial judge had treated him unfairly due to various adverse rulings and had shown partiality toward Mother. The trial court entered an order on January 15, 2014, denying Father's motion to recuse. The trial court noted that Father had failed to demonstrate any basis for the judge's recusal during oral argument. The court further stated in its order that the judge had no relationship with either party outside the courtroom, had no personal bias or prejudice concerning either party, and had no doubt regarding his ability to preside impartially in the case. The court also stated that there was no reasonable appearance of bias that would cause the judge's impartiality to be questioned.

As this Court has previously elucidated regarding recusal:

> The grant or denial of a motion for recusal "'rests in the sound discretion of the trial judge and should not be reversed on appeal unless the record reveals a clear abuse of that discretion.'" *Moody v. Hutchison,* 247 S.W.3d 187, 202 (Tenn. Ct. App. 2007) (quoting *Irvin v. Johnson,* No. 01-A-01-9708-CV-00427, 1998 WL 382200 at \*2 (Tenn. Ct. App. July 10, 1998)) (internal citation omitted). As our Supreme Court has explained:

> > Tennessee Supreme Court Rule 10, Canon 3(E)(1) states, "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer . . . ." We have held that a recusal motion should be granted when "the judge has any doubt as to his or her ability to preside impartially in the case" or "'when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis [v. Liberty Mut. Ins. Co.*], 38 S.W.3d [560,] 564-65 [(Tenn. 2001)] (quoting *Alley v. State,* 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). Even if a judge believes he can be fair and impartial, the judge should disqualify himself when "'the

judge's impartiality might be reasonably questioned'" because "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Id.* (quoting Tenn. Sup. Ct. R. 10, Canon 3(E)(1)).

*Bean v. Bailey,* 280 S.W.3d 798, 805 (Tenn. 2009); *see also Malmquist v. Malmquist,* 415 S.W.3d 826, 838-39 (Tenn. Ct. App. 2011).

*McCarter v. McCarter*, No. E2013-00890-COA-R3-CV, 2014 WL 6736305, at *25 (Tenn. Ct. App. Dec. 1, 2014) (footnote omitted).

Father argues in his brief that the trial judge demonstrated partiality toward Mother and "abused" or "disparaged" Father during the various hearings held in this matter. In the absence of a proper transcript, it is impossible for this Court to review these allegations. We note, however, that adverse rulings and findings regarding credibility alone do not merit a trial judge's recusal. *See Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001). As our Supreme Court explained:

Given the adversarial nature of litigation, trial judges necessarily assess the credibility of those who testify before them, whether in person or by some other means. Thus, the mere fact that a witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse. If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartially issue for strategic advantage, which the courts frown upon.

*Id.*

Furthermore, as this Court has elucidated regarding bias and/or prejudice:

[A]lthough "bias" and "prejudice" generally "refer to a state of mind or attitude that works to predispose a judge for or against a party[,] . . . [n]ot every bias, partiality or prejudice merits recusal." *Alley v. State,* 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). Rather, "[t]o disqualify, prejudice must be of a personal character, directed at the litigant, [and] 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" *Id.* (quoting *State ex rel. Wesolich v. Goeke,* 794 S.W.2d 692, 697 (Mo. App. 1990)). "Personal bias involves an antagonism toward the moving party, but does not refer to any views that a judge may

29

have regarding the subject matter at issue." *Id.* (citing *United States v. Baker,* 441 F. Supp. 612, 616 (M. D. Tenn. 1977); 46 Am. Jur. 2d "Judges" § 167 (1969)). Moreover, "[i]mpersonal prejudice resulting from the judge's background experience does not warrant disqualification." *Id.* (citation omitted). Where "the bias is based upon [the judge's] actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge." *Id.*

*Durham v. Tenn. Dep't of Labor & Workforce Dev.*, No. M2014-00428-COA-R3-CV, 2015 WL 899024, at *10 (Tenn. Ct. App. Feb. 27, 2015).

In this matter, Father has not alleged any personal bias or prejudice exhibited by the trial judge of an extrajudicial nature. Father attempts to point to brief excerpts from hearing video recordings that are beyond this Court's permissible consideration in order to show that the trial judge acted unfairly during the hearings. We reiterate, however, that because Father has failed to provide this Court with an adequate record to review this issue, no relief can be granted. *See Chiozza*, 315 S.W.3d at 489.

## XIII. Conclusion

For the foregoing reasons, we conclude that the trial court's judgment should be affirmed in all respects. This case is remanded to the trial court for enforcement of the court's judgment and collection of costs below. Costs on appeal are taxed to the appellant, Peter L. White.


_____
THOMAS R. FRIERSON, II, JUDGE